UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MERRY CHARTERS, LLC and<br>CARL SHILLO | : <br> : <br> : | NO.: 3:02CV336 (MRK) |
| v. | : <br> : | |
| TOWN OF STONINGTON, STONINGTON<br>PLANNING & ZONING COMMISSION,<br>ZONING BOARD OF APPEALS OF THE<br>TOWN OF STONINGTON, EDWARD T.<br>SULLIVAN and GEORGE THAYER | : <br> : <br> : <br> : <br> : | <br><br><br><br>FEBRUARY 19, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL
AND MOTION TO PRECLUDE**

**I.    FACTUAL BACKGROUND**

This case was brought by the plaintiffs alleging the Town defendants violated their substantive due process rights and equal protection rights by denying plaintiffs' a zoning permit and a denying a request for variance.  Plaintiff Shillo claims that the defendants' failure to issue a permit has shut down his business, Merry Charters, LLC, and also claims lost profits and loss of his business.  In his first report of September 27, 2003, plaintiff's expert, Dr. Shapiro opined that the value of the business, using the market sales approach, was $52,228, and that the plaintiff was also entitled to an additional $178,593 for the cost of his health insurance premiums which were paid by the LLC.  (**Exhibit A**, Dr. Shapiro's September 27, 2003 report, p. 3).

At plaintiff's deposition, on October 10, 2003 and December 19, 2003, counsel

inquired as to the nature of his business, which included a relationship with Mohegan Sun.  Plaintiff testified there was no written contract.  (**Exhibit B,** Deposition Transcript of Carl Shillo, December 19, 2003, pp. 119-120).  Counsel then asked the plaintiff to describe the relationship and asked who at the Mohegan Sun would have the most knowledge concerning the negotiations and business relationship, to which the plaintiff replied either William Gonzalez or Steven Sabo.  (Id. p 45-46).  Mr. Sabo is the Director of the Bus Sales Department.  Id.

The defendant then sought to take the deposition of Steven Sabo, and for Mr. Sabo to produce documents concerning the alleged business relationship with the plaintiffs in this case, Merry Charters, LLC and Carl Shillo.   Defendants had served upon Mr. Sabo a subpoena duces tecum to appear for a deposition on January 14, 2004, including a schedule A to produce the documents regarding the business relationship.  **Exhibit C**, Subpoena to Steven Sabo, **Exhibit D**, Affidavit of Melinda A. Powell.  Plaintiffs did not object to the taking of this deposition.  (**Exhibit D**).   Defense counsel received a call from Mark Hamilton, an attorney from Mohegan Sun prior to the deposition date,  who advised her that Mr. Sabo would not appear because he was protected by tribal sovereign immunity.  Id.  The deposition did not go forward.

Thereafter, by report dated January 23, 2003, Dr. Shapiro changed his opinions and employed a lost profits analysis by using a lost cash flows approach, hypothesizing

2

what the revenues would have been of the business, and concluded that the plaintiff had suffered damages in the range of $522,965 to $530,896. (**Exhibit E**).

Dr. Shapiro's January 23, 2004 report of this amount is $257,965 to 265,896 for lost cash flows (profits). At least 40% of the projected revenue is claimed to be attributed to a business relationship with the Bus Sales Department at Mohegan Sun Casino. Id., p. 3. The "lost cash flows" also amounts spent by (and projected to be spent by) the Mohegan Sun for advertising of this joint venture. Id., p. 4. Dr. Shapiro also projected that plaintiff's revenues from 2001 to 2002 would have increased 30% as a result of the increase in Mohegan Sun's revenues and additional 8.2% per year thereafter, also tied to the projected increase in Mohegan Sun's business. Id., p. 3-4. Dr. Shapiro's deposition began on January 28, 2004 and was completed on February 12, 2004 . At his deposition, he stated that the only source of the information regarding the 40% of revenue was the plaintiff, and he could not substantiate that percentage based upon all the business records the plaintiff provided him. (**Exhibit F**, January 28, 2004 transcript, p. 72. He also knew little about the business relationship between the plaintiff and Mohegan Sun. Id., p. 63-67. He could not testify at to how much was received per ticket from this agreement, stating that the plaintiff told him it was "seven, eight or nine" dollars. Id. The agreement including Mohegan Sun was "key", according to Dr. Shapiro. Id, p. 62, line 24-25.

3

Due to the heavy reliance on the Mohegan Sun—Merry Charters' relationship as supporting plaintiff's damages claim, defense counsel again attempted to get information from Mohegan Sun regarding the relationship. **Exhibit D**. The undersigned contacted Attorney Hamilton on February 11, 2004 to inquire as to whether Mr. Sabo would voluntarily agree to provide the requested information, without being deposed. Id. Mr. Hamilton seemed amenable to this process and said he would talk with Mr. Sabo to see when he was available and would call the undersigned back. Id. Having not received a return call, the undersigned called Atty. Hamilton on February 13, 2004, to inquire whether a meeting could occur on February 16, 2004. Id. Attorney. Hamilton then advised that he would not cooperate. Id.

Although neither the casino or Steven Sabo are parties to the subject lawsuit, the agreement between the plaintiff and the casino is obviously relevant to the case because a substantial portion of plaintiff's current claimed damages results from whatever business relationship Merry Charters had with the casino, as opined by plaintiff's economic expert. The defendant may be irreparably harmed and significantly impaired in defending this case if not permitted to obtain information regarding said agreement. Therefore, the defendant respectfully requests that this motion to compel be granted or, in the alternative, requests that the Court preclude any amount of damages claimed by the plaintiff to be related to the business relationship with

4

Mohegan Sun. A copy of this Motion has been served to Mr. Sabo, care of Attorney Hamilton.

## II. **LAW AND ARGUMENT**

Rule 45(e) provides that the Court may compel discovery, including discovery directed to non-party fact witnesses. A party is entitled to discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26 (b)(1). In order to rule on the instant motion, the Court must determine whether Mr. Sabo is entitled to tribal sovereign immunity, as claimed by Attorney Hamilton. If the Court determines that the defendants may not discover any information from Mohegan Sun, principles of due process and equity require that the plaintiff be precluded from introducing any evidence as to that business relationship and claimed lost profits. Without a deposition of Mr. Sabo and the ability to review any documents concerning this business relationship, defendants are unable to effectively cross-examine the plaintiff on his claim for damages or to determine the veracity of his claims. Therefore, that portion of the damages claim should be precluded.

Although tribal immunity from suit is well established, "[t]he extent to which tribal sovereign immunity applies to non-party subpoenas of individuals in civil litigation is not clearly established in this Circuit, and there is little authority anywhere on whether a native American tribe may be compelled to testify or produce documents as non-party

5

fact witness pursuant to the district courts' subpoena power." Catskill Development, LLC v. Park Place Entertainment Corp., 206 F.R.D. 78 (S.D. N. Y. 2002) (Attached for the Court's convenience as **Exhibit G**).  This Circuit has not addressed the issue of non-party subpoenas and sovereign immunity in the tribal context.  Id. In Catskill, the District Court reviewed the available caselaw, and finding nothing on point, analogized tribal immunity to the immunity of the federal government and held that the subpoenas to the non-party fact witnesses were unenforceable absent waiver of the immunity. Id. The District Court found that the agreement between the Tribe and the defendant in that case waived the immunity of the Tribe.  Id.   In this case, by entering into an agreement with the plaintiff, Mohegan Sun has waived its immunity from discovery in a federal action which concerns that relationship.  Plaintiff in this case testified that there was no written agreement with the casino, unlike in Catskill.  However, this fact should not be dispositive of the issue of waiver.  The Court in Catskill read the waiver in that case, which referred to litigation arising out of disputes between the Tribe and the defendant under the agreement to include the lawsuit between the plaintiff and the defendant for tortious interference.  It is on this basis of waiver that the Court may order Mr. Sabo to comply.

In addition, tribal sovereign immunity does not apply to injunctive relief.  Basset v. Mashantucket Pequot Museum and Research, 221 F. Supp.2d 271 (Conn.

2002)(Attached for the Court's convenience as **Exhibit H**).  In that case, Judge Droney denied a motion to dismiss by Mashantucket Pequot officials in an action brought against them alleging copyright infringement.  Defendants here are requesting, in essence, equitable relief in the nature of an order compelling Mr. Sabo to appear at a deposition and to produce documents.  Therefore, tribal sovereign immunity does not apply and defendants should be permitted to depose Mr. Sabo.

### III.     CONCLUSION

For all the foregoing reasons, defendants request that the Court order Mr. Sabo to appear for a deposition and to produce all documents relating to Mohegan Sun's business relationship with the plaintiff or that the Court preclude plaintiff's damages claims relating to the relationship.

DEFENDANTS,
TOWN OF STONINGTON,
STONINGTON PLANNING & ZONING
COMMISSION, TOWN OF STONINGTON
ZONING BOARD OF APPEALS, EDWARD
SULLIVAN and
GEROGE THAYER


By__/s/_____
   Melinda A. Powell
   ct17049
   Howd & Ludorf
   65 Wethersfield Avenue
   Hartford, CT  06114
   860 249-1361
   (860) 249-7665 (Fax)
   mpowell@hl-law.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 19th day of February, 2004.

Frank J. Szilagyi, Esquire
Josephine A. Spinella, Esquire
Silvester & Daly
72 Russ Street
Hartford, CT  06106

AND a copy has been mailed and served upon:

Steven Sabo, Director of Bus Sales
c/o Mark Hamilton, Esquire
Legal Department
Mohegan Sun Casino
Uncasville, CT  06382

                                        ___/s/_____
                                        Melinda A. Powell