LOIS Federal District Court Opinions

BASSET v. MASHANTUCKET PEQUOT MUSEUM AND RESEARCH, (Conn. 2002)

*221 F. Supp.2d 271*

Debra BASSETT d/b/a Bassett Productions, Bassett Entertainment Corp.,

Plaintiffs, v. MASHANTUCKET PEQUOT MUSEUM AND RESEARCH CENTER INC., et al.

Defendants.

No. Civ.A. 3:96 CV 1947(CFD).

United States District Court, D. Connecticut

August 6, 2002

**West Page 272**

James C. Riley, Whitman, Breed, Abbott & Morgan, Greenwich, CT, Rodney E. Gould, Richard A. Goren, Ellen Rappaport Tanowitz, Rubin, Hay & Gould, P.C., Framingham, MA, for Plaintiff.

David S. Williams, Jo-Ann M. Shyloski, Brown, Jacobson, Tillinghast, Lahan & King, Norwich, CT, Elizabeth Conway, Mashantucket, CT, Edward Wood Dunham, Erika L. Amarante, Wiggin & Dana, New Haven, CT, Robert D. Tobin, Tobin, Carberry, O'Malley, Riley & Selinger, New London, CT, for Defendants.

***RULING ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT***

DRONEY, District Judge.

**I. Background**

The plaintiffs, Debra Bassett (doing business as Bassett Productions) and Bassett Entertainment Corporation, bring this action alleging that the defendants violated state and federal law with regard to the production of a film based on the 1636-38 Pequot War.[fn1] On July 20, 1998, the Court granted the defendants' motion to dismiss the plaintiffs' First Amended Complaint. The plaintiffs subsequently appealed, and the Second Circuit affirmed in part, vacated in part, reversed in part, and remanded. *See Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343 (2d Cir. 2000).

The plaintiffs' First Amended Complaint named as defendants the Mashantucket Pequot Tribe (the "Tribe"), the Mashantucket Pequot Museum & Research Center (the "Museum"), Theresa Bell, and Jack Campisi. That complaint alleged copyright infringement, breach of contract, and various Connecticut state law torts. The Court dismissed the copyright claims against the Tribe and the Museum for lack of subject matter jurisdiction, dismissed the state law claims against the Tribe pursuant to the doctrine of tribal immunity, and dismissed the remaining claims against the Museum and all of the claims against Bell and Campisi upon finding the Tribe to be an "indispensable party" under Fed.R.Civ.P. 19(b).

The Second Circuit concluded that the Court had subject matter jurisdiction over the plaintiffs' copyright claims against the Tribe and Museum as such claims "arise under" the Copyright Act pursuant to 28 U.S.C. § 1338(a). However, the Second Circuit affirmed the Court's dismissal of

**West Page 273**

the copyright claims against the Tribe based on the doctrine of tribal immunity from suit, holding that "[n]othing on the face of the Copyright Act purports to subject tribes to jurisdiction of the federal courts in civil actions brought by private parties . . . and a congressional abrogation of tribal immunity cannot be implied." *Id.* at 357.

The Second Circuit disagreed with the Court's holding that the Tribe was an indispensable party and thus vacated the Court's dismissal under Fed.R.Civ.P. 19(b) of the plaintiffs' copyright, tort, and contract claims against the Museum, Bell, and Campisi. *See id.* at 358-60. The Second Circuit reversed the dismissal of the copyright claim for an injunction against the Museum and remanded for further consideration the plaintiffs' claims for damages in copyright and tort against the Museum, Bell, and Campisi, and the claim for contract damages against the Museum. *See id.*

Following the Second Circuit's ruling, the plaintiffs filed a Second Amended Complaint. In this complaint, the plaintiffs recast their claims against the "Mashantucket Pequot Museum and Research Center" to reflect its being sued as the "Mashantucket Pequot Museum and Research Center, Inc., a Connecticut corporation" (the "Corporation"), and the "Mashantucket Pequot Museum and Research Center, an unincorporated association" (the "Association"). The Second Amended Complaint also named as defendants the following individuals as "Officers and/or Directors of the Mashantucket Pequot Museum and Research Center and/or Mashantucket Pequot Museum and Research Center, Inc." (the "Directors"): Richard A. Hayward, Charles O'Malley, Sandra Cadwalader, Sam Gejdenson, John Holder, Alvin Josephy, Charles Klewin, Shepard Kreech, Kevin McBride, and Shirley Patrick. Additionally, the plaintiffs modified their claims against defendants Bell and Campisi to reflect their being sued "individually and as an authorized agent of the Tribe," as well as in their capacities as officers, representatives, and/or agents of "the Corporation and/or the Association." The Second Amended Complaint also eliminated the Tribe as a defendant, consistent with the Second Circuit's holding as to the Tribe's immunity.

In the Second Amended Complaint — which is now the operative complaint — the plaintiffs continue to assert copyright infringement, tortious interference with contract, and Connecticut Unfair Trade Practices Act ("CUTPA") claims against Bell and Campisi and assert copyright infringement and CUTPA claims against the Corporation, Association, and Directors. Damages are claimed against all defendants as to all claims and preliminary and permanent injunctive relief is claimed against all defendants as to the copyright claim.

Following the filing of the Second Amended Complaint, the defendants Bell and Campisi filed a motion to dismiss the

plaintiffs' Second Amended Complaint [Doc. # 71]. After that, the defendants Corporation, Association, and Directors moved for summary judgment[fn2] [Doc. # 85]. Each motion is discussed below.

**II. Motion for Summary Judgment**

The defendants Corporation, Association, and Directors have moved for summary judgment on the basis that (1) the "Association" named by the plaintiffs does not exist, and (2) there exist no genuine issues of material fact that the Corporation, Association, and Directors were not parties to the events or transactions alleged in the Second Amended Complaint
**West Page 274**
and that they are entitled to judgment as a matter of law.

Following this Court's hearing on the pending motions, discovery on the issues raised by the motion to dismiss and motion for summary judgment, and additional briefing, the plaintiffs conceded that summary judgment should enter as to the Corporation and Association, as well as Hayward, O'Malley, Cadwalader, Gejdenson, Holder, Josephy, Klwein, Kreech, and Patrick. Accordingly, summary judgment is GRANTED, ABSENT OBJECTION as to those defendants, and as to Counts Seven, Eight, Ten, and Eleven of the Second Amended Complaint.[fn3]

Though the plaintiffs do not concede that summary judgment should enter as to defendant McBride, because McBride had "direct dealings with the plaintiff," the Court notes that McBride has been sued only in his capacity as an "officer and/or director" of the Corporation and Association, and thus, summary judgment is GRANTED, without prejudice,[fn4] as to the claims against McBride as well.

Thus, the only remaining defendants are Bell and Campisi (1) in their individual capacities, (2) in their official capacities as officers, representatives, and/or agents of the Corporation and Association, and (3) in their official capacities as officers, representatives, and/or agents of the Tribe. The causes of action as to these two defendants are copyright infringement, tortious interference with contract, and CUTPA violations, and are set forth in Counts One through Six and Nine of the Second Amended Complaint.

The Court will now address Bell and Campisi's motion to dismiss.

**III. Motion to Dismiss**

**A. Facts**[fn5]

In October 1994, Debra Bassett ("Bassett"), doing business as Bassett Productions, and on behalf of Bassett Entertainment Corporation,[fn6] met with representatives of the Mashantucket Pequot Tribe (the "Tribe"), a federally recognized Indian tribe with a reservation in the State of Connecticut, to discuss producing a film for the new Mashantucket Pequot Museum & Research Center (the "Museum") about the 1636-38 Pequot War. In November of that year, defendant Theresa Bell, a member of the Tribe and Executive Director of the Museum, signed a

**West Page 275**
"confidential disclosure agreement" in which she agreed that all information received from Bassett Productions was confidential and proprietary, and was to be returned to Bassett Productions at its request. In February 1995, defendant Jack Campisi, a projects director for the Museum, advised Bassett that the Tribe intended to hire her to produce the film, contingent on the negotiation of a satisfactory contract and the Tribe's acceptance of a script for the film.

In August 1995, Bassett Productions entered into a written contract with the Tribe for the development and production of the film. The contract identified Bassett Productions as the "Producer" and the Tribe as the "Owner," but did not define these terms. It provided that Bassett Productions would hire and supervise the writing of a screenplay by Keith Merrill and George Burdeau and that the Tribe would compensate Bassett Productions for development costs according to an agreed schedule. It also agreed that when the Tribe approved the final draft of the screenplay, Bassett Productions would have exclusive rights to produce the film for exhibition at the Museum.

Some time before October 20, 1995, Bassett delivered the Tribe a script that she had written, based on a "script scenario" she had developed with assistance from her associate Allan Eckert.[fn7] The script was prominently marked on its first page, "© 1995 Bassett Entertainment Corporation."[fn8]

On October 20, 1995, Bassett received a notice from the Tribe terminating the contract. The notice asserted that Bassett had not "perform[ed] the contract as the parties anticipated."

Following the termination of the contract, the Tribe continued to pursue the development and production of a film on the Pequot War for exhibition at the Museum, with Burdeau and Merrill as producers and directors. In October 1996, filming was completed on a motion picture entitled, "The Witness." The Tribe currently shows the film at the Museum.

In September 1996, Bassett commenced this lawsuit, seeking damages and injunctive relief against the Tribe, the Museum, Bell, and Campisi for copyright infringement, breach of contract, and various Connecticut state law torts. As noted above, Bell and Campisi are the only remaining defendants and have moved to dismiss the plaintiffs' Second Amended Complaint, under Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6).

**B. Motion to Dismiss Claims As Officers, Representatives, and/or Agents of Corporation and Association**

Bell and Campisi's motion to dismiss under Fed.R.Civ.P. 12(b)(6) concerns the plaintiffs' claims against Bell and Campisi as officers, representatives, and/or agents of the Corporation and Association. The party moving to dismiss under Rule 12(b)(6) "must carry the burden of showing that it appears beyond doubt that the plaintiff[] can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41,

**West Page 276**
4546, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In reviewing a Rule 12(b)(6) motion, a court must "accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

As noted above, the plaintiffs brought certain of their claims against Bell and Campisi in their capacities as officers, representatives, and/or agents of the now-dismissed Corporation and Association.[fn9] As the plaintiffs have conceded that summary judgment should enter as to the Corporation, Association, and its members, the claims against Bell and Campisi as officers, representatives, and/or agents of the Corporation and Association are dismissed.

**C. Motion to Dismiss Claims As Officers, Representatives, and/or Agents of Tribe**

Bell and Campisi argue that the plaintiffs' claims against them in their individual and official capacities as officers, representatives, and/or agents of the Tribe must be dismissed under Fed.R.Civ.P. 12(b)(1) because such claims are barred by the doctrine of tribal sovereign immunity.[fn10] Bell and Campisi also raise the absence of exhaustion of tribal remedies as an alternative basis for dismiasal.[fn11]

**1. Tribal Immunity**

As immunity is a limitation on federal court jurisdiction, a motion to dismiss based on tribal immunity is appropriately examined under Fed.R.Civ.P. 12(b)(1). *See Garcia v. Akwesasne Housing Authority,* 268 F.3d 76, 84 (2d Cir. 2001); *Hagen v. Sisseton-Wahpeton Community College,* 205 F.3d 1040, 1043 (8th Cir. 2000). When considering a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." *IUE AFL-CIO Pension Fund v. Herrmnan,* 9 F.3d 1049, 1055 (2d Cir. 1993) (quoting *Goldman v. Gallant Secs. Inc.,* 878 F.2d 71, 73 (2d Cir. 1989)), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). In doing so, the allegations of the complaint are construed in the plaintiffs favor. *See Connell v. Signoracci,* 153 F.3d 74 (2d Cir. 1998); *Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.,* 968 F.2d 196, 198 (2d Cir. 1992). A district court, however, need not confine its evaluation of subject matter jurisdiction to the face of the pleadings and may consider affidavits and other evidence submitted by the parties. *See Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009,
**West Page 277**
91 L.Ed. 1209 (1947); *Exchange Nat' Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1130-31 (2d Cir. 1976); *Matos v. United States Dep't of Hous. & Urban Dev.,* 995 F. Supp. 48, 49 (Conn. 1997). Once the question of subject matter jurisdiction has been raised, the burden of establishing subject matter jurisdiction rests on the party asserting jurisdiction. *See Thomson v.*

*Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

Bell and Campisi advance two arguments in support of their contention that tribal sovereign immunity divests this Court of subject matter jurisdiction over the plaintiffs' claim. First, they argue that, as "tribal officials," the Tribe's sovereign immunity also precludes the plaintiffs' claims against them. Second, Bell and Campisi argue, to the extent the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), allows this Court to grant injunctive relief against tribal officials, the plaintiffs have not requested an injunction against Bell and Campisi.

The plaintiffs respond that Bell and Campisi are not protected by the Tribe's sovereign immunity because immunity only extends to tribal officials cloaked with official policymaking authority and engaging in discretionary duties. Additionally, even assuming Bell and Campisi can claim such "official" status, the plaintiffs argue, Bell and Campisi are not entitled to immunity because they acted beyond the scope of the authority that the Tribe could legally bestow on them. Finally, the plaintiffs contend that injunctive relief is available against Bell and Campisi in their official capacities notwithstanding tribal immunity. Each of these issues is discussed below.

It is well established that Indian tribes possess the common law immunity from suit traditionally enjoyed by sovereign powers. *See, e.g., Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 358 (2d Cir. 2000); *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *United States v. United States Fidelity & Guar. Co.,* 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940). "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived immunity." *Kiowa Tribe of Okla. v. Manufacturing Techs., Inc.,* 523 U.S. 751, 754, 758, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998); *see also Romanella v. Hayward,* 933 F. Supp. 163, 167 (Conn. 1996), *aff'd,* 114 F.3d 15 (2d Cir. 1997) ("Absent a clear and unequivocal waiver by the tribe or congressional abrogation, the doctrine of sovereign immunity bars suits . . . against a tribe."). Tribal> <sovereign> <immunity> even covers certain commercial <activities> occurring off a tribe's reservation. *See Romanella,* 933 F. Supp. at 167; *cf: Kiowa,* 523 U.S. at 755, 758, 118 S.Ct. 1700 (discussing exceptions to <tribal> <sovereign> <immunity> while declining to distinguish between a tribe's commercial and non-commercial <activities>). Additionally, tribal immunity may extend to entities that are agencies of the tribe, *see Bassett,* 204 F.3d at 358 (citing *Penn hurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)), as well as "individual tribal officials acting within their representative capacity and within the scope of their official authority." *Romanella,* 933 F. Supp. at 167 (quoting *Hardin v. White Mountain Apache Tribe,* 779 F.2d 476, 478 (9th Cir. 1985), and citing *Tenneco Oil Co. v. Sac & Fox Tribe of Indians,* 725 F.2d 572, 574 (10th Cir. 1984)).

The plaintiffs contend that tribal immunity for tribal officials extends only to high-level officers or officials who are performing governmental functions and exercising discretion.

*See Turner v. Martire,* 82 Cal.App.4th 1042, 99 Cal.Rptr.2d 587 (2000); *Otterson v. House,* 544 N.W.2d 64
**West Page 278**
(Minn.Ct.App. 1996); *Baugus v. Brunson,* 890 F. Supp. 908, 911 (E.D.Cal. 1995). However, district courts within the Second Circuit have not held that such a limitation exists. *See Romanella,* 933 F. Supp. at 167 (extending tribal immunity to tribal members in charge of maintenance of parking lot on which plaintiff slipped), *aff'd on other grounds,* 114 F.3d 15 (2d Cir. 1997); *Wallett v. Anderson,* 198 F.R.D. 20, 24 (Conn. 2000) (assuming for purposes of immunity inquiry that attorney employed by Indian casino is "tribal official"), *cf. Kiowa,* 523 U.S. at 755, 758, 118 S.Ct. 1700 (declining to distinguish between a tribe's commercial and governmental activities). Moreover, Connecticut state courts have not limited the scope of tribal immunity in this way. *See Kizis v. Morse Diesel International, Inc.,* 260 Conn. 46, 794 A.2d 498, 505 (2002) (applying principles of tribal sovereign immunity to director of facilities operation and building official); *Paszkowski v. Chapman,* 2001 WL 1178765, at *4 (Conn.Super. Aug. 30, 2001) ("[T]he defendants who are employees of the Tribe are being sued for their conduct in their official capacities as a `Director of Facilities Operations' and a `building official at the Mohegan Sun Casino.' There is no basis for distinguishing between the actions of `officials' or `employees' unless the consequence of the `official's' conduct is different in legal effect from the consequences of the conduct of a `mere' employee."). These decisions hold that tribal immunity extends to all tribal employees acting within their representative capacity and within the scope of their official authority. The Court agrees and finds that tribal immunity applies to Bell, as Executive Director of the Museum, and Campisi, as projects director for the Museum, for the conduct alleged in the Second Amended Complaint. The Court will next examine whether such immunity for Bell and Campisi applies to the plaintiffs' claims for injunctive relief and damages.

a. Copyright Claim for Injunctive Relief

The defendants recognize that, under the doctrine of *Ex parte Young,* prospective injunctive or declaratory relief is available against tribal officials when a plaintiff claims an ongoing violation of federal law or claims that a tribal law or ordinance was beyond the authority of the Tribe to enact.[fn12] *See* Defs.' Supp.Mem. Supp.Mtn. to Dismiss at 6. That doctrine, which provides that "[t]he Eleventh Amendment does not preclude suits against state officers for injunctive relief. . . . [because] state officers have no authority to violate the Constitution and laws of the United States [and thus,] their illegal <acts> are stripped of state authority. . . ." Erwin Chemerinsky, *Federal Jurisdiction* 412-13 (3d ed. 1999), has been specifically extended to <tribal> <sovereign> <immunity in a number of decisions. *See Bassett,* 204 F.3d at 358-59 (reversing the dismissal of the plaintiffs' copyright claim for an injunction against the Museum), *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (discussing tribal officer immunity and *Ex parte Young*); *Dawavendewa v. Salt River Proj. Agricultural Improvement and Power Dist.,* 276 F.3d 1150, 1160 (9th Cir. 2002) (sovereign immunity does not bar prospective relief

against individual tribal officials acting beyond the scope of their authority in violation of federal law); *Garcia,* 268 F.3d at 87 ("Although [tribal

**West Page 279**

housing agency] itself cannot be made to pay damages and cannot even be named as a defendant, [plaintiff] can still obtain injunctive relief against it by suing an agency officer in his official capacity."): *Tanmiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida,* 177 F.3d 1212, 1225 (11th Cir. 1999); *Arizona Pub. Serv. Co. v. Aspaas,* 77 F.3d 1128 (9th Cir. 1995) (enjoining tribal officials from enforcing anti-nepotism policy which violated federal law); *Burlington N.R.R. v. Blackfeet Tribe,* 924 F.2d 899 (9th Cir. 1991); *cf. Puyallup Tribe, Inc. v. Departmeint of Game,* 433 U.S. 165, 171-72, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977) ("[W]hether or not the Tribe itself may be sued in a state court without its consent or that of Congress, a suit to enjoin violations of state law by individual tribal members is permissible.") Indeed, "[t]he rule allowing some suits against officials, of course, is part fiction as to all sovereigns since the tribal, state, or federal government may well in fact support the `unauthorized' actions of its officers. Nevertheless, the principle remains the law and is often a reasonably convenient method of challenging governmental authority, so long as monetary damages are not involved." David H. Getches and Charles F. Wilkinson, *Cases and Materials on Federal Indian Law* 434-35 (3d ed. 1993).

The defendants dispute, however, whether the plaintiffs have adequately alleged their claim for injunctive relief as to these remaining two defendants. The defendants argue that the Second Circuit instructed the plaintiffs to amend their pleading to specifically seek an injunction against the Museum or Museum administrators — including Bell and Campisi — if they wished to seek such injunctive relief and that no such amendment was made.

The Court finds, however, that the plaintiffs have sufficiently set forth a request for injunctive relief against Bell and Campisi in their official capacity for the alleged copyright violation. In the plaintiffs' First Amended Complaint, which was the operative complaint at the time of the Second Circuit's opinion, the heading of Count VIII indicated that the plaintiffs sought a preliminary and permanent injunction against "the Pequots," i.e., the Tribe. In the Second Amended Complaint, the heading of Count IX indicates that the plaintiffs seek a preliminary and permanent injunction against "all defendants," and paragraph 127 sets forth a request to "enjoin[] the Defendants' further copyright infringement of Bassett's copyrighted work, including any and all future public or private displays or exhibitions of the completed film concerning the 1637 Pequot massacre; and (ii) ordering the return to Bassett of all of Bassett's original proprietary work and the subsequent adaptations made thereto by its writers for hire, Burdeau and Merrill." Accordingly, as the plaintiffs have requested injunctive relief against Bell and Campisi in their official capacities for an alleged ongoing violation of federal copyright law, Bell and Campisi are subject to suit under *Ex parte Young,* and the Court declines to dismiss the plaintiffs' copyright claims for injunctive relief against Bell and Campisi on the basis of lack of subject matter jurisdiction.[fn13]

b. Individual Capacity Claims for Damages

The defendants also contend that the doctrine of tribal immunity extends to the plaintiffs' copyright and state law damages claims against Bell and Campisi, even though the Second Amended complaint alleges that they are sued in their
**West Page 280**
"individual capacities." The defendants argue that when a claim is asserted against a tribal representative relating to the performance of the representative's official duties or responsibilities on behalf of the tribe, that tribal representative is also immune from suit.

Eleventh Amendment immunity does not extend to suits against a state official in his "individual capacity," because such suits are not considered to be against the State. *See, e.g., Hafer v. Melo,* 502 U.S. 21, 25-26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (holding that individual capacity suit against Auditor General of Pennsylvania was not barred by Eleventh Amendment); Chemerinsky, *Federal Jurisdiction* 422 ([I]f the suit is against an officer for money damages where the relief would come from the officer's own pocket, there is no Eleventh Amendment bar even though the conduct was part of the officer's official duties.). However, "[i]n such a suit, the officer could claim absolute or qualified immunity as a defense. The state's choice to indemnify the officer would not convert the suit from individual to official capacity." Chemerinsky, *Federal Jurisdiction* 422.

In the tribal immunity context, a claim for damages against a tribal official lies outside the scope of tribal immunity only where the complaint pleads — and it is shown — that a tribal official acted beyond the scope of his authority to act on behalf of the Tribe. *See Bassett,* 204 F.3d at 359-60 (directing Court to consider validity of individual capacity damages claims against Bell and Campisi in light of plaintiffs' allegation that "Bell and Campisi `acted beyond the scope of the authority that the [T]ribe could lawfully bestow' on them in infringing Bassett's copyrights and committing various state-law torts.") (citing *Doe v. Phillips,* 81 F.3d 1204, 1210 (2d Cir. 1996)); *Garcia v. Akwesasne Housing Authority,* 105 F. Supp.2d 12, 18 (N.D.N.Y. 2000) (stating that personal capacity claim may proceed against tribal official if allegations indicate that tribal official outside the scope of his delegated authority), *vac'd. on other grounds,* 268 F.3d 76 (2d Cir. 2001); *Romanella,* 933 F. Supp. at 168 ("In *Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977), for example, the Supreme Court permitted a state court to `adjudicate the rights of the individual defendants,' *id.* at 173, 97 S.Ct. at 2621, relating to fishing rights because those defendants, including several who were tribal officials, had been acting as fishermen rather than tribal government officers when they had engaged in the challenged activities.").

Claimants may not simply describe their claims against a tribal official as in his "individual capacity" in order to eliminate tribal immunity. As mentioned, that designation in suits against state officials affects Eleventh Amendment immunity, but does not reduce the protections afforded by absolute or qualified immunity to those state officials.

Permitting such a description to affect tribal immunity would eviscerate its protections and ultimately subject Tribes to damages actions for every violation of state or federal law. The sounder approach is to examine the *actions* of the individual tribal defendants. Thus, the Court holds that a tribal official – even if sued in his "individual capacity" – is only "stripped" of tribal immunity when he acts "manifestly or palpably beyond his authority. . . ." *Bassett,* 204 F.3d at 359 (quoting *Doe,* 81 F.3d at 1210).

The plaintiffs also contend that their allegations that Bell and Campisi tortiously interfered with the plaintiffs' contract, violated CUTPA, and used the plaintiffs' copyrighted script to produce a new film are sufficient to state a claim that Bell and Campisi acted beyond the authority

**West Page 281**

the Tribe could lawfully bestow upon them. *Cf. Wallett,* 198 F.R.D. at 24 ("If [the allegation that the defendant conspired to violate plaintiffs constitutional rights] is proven to be true, it is conduct that cannot be within the scope of [the tribal official's] authority."). The Court concludes, however, that it is insufficient for the plaintiffs merely to allege that Bell and Campisi violated state and federal law in order to state a claim that Bell and Campisi acted beyond the scope of their authority; it would be tantamount to eliminating tribal immunity from damages actions because a plaintiff must always allege a wrong in order to state a claim for relief.[fn14] Rather, the Court finds that to state a claim for damages against Bell and Campisi, the plaintiffs would have to allege and prove that Bell and Campisi acted "without any colorable claim of authority," apart from whether they acted in violation of federal or state law.[fn15] *See Doe,* 81 F.3d at 1210 (internal quotation marks omitted). The plaintiffs have neither plead nor shown such conduct here, and as such, all of the damages claims against Bell and Campisi in Counts One through Six of the Second Amended Complaint are dismissed.

**2. Exhaustion**

With regard to the plaintiffs' remaining claim for injunctive relief on its copyright claim, the defendants also raise lack of tribal exhaustion as a basis for dismissal. The doctrine of tribal exhaustion, set forth in *National Farmers Union Insurance Cos. v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), requires federal courts to abstain from hearing certain claims against Indian tribes until the plaintiff has first exhausted those claims in a tribal court. The Second Circuit recently examined the tribal exhaustion doctrine in *Garcia v. Akwesasne Housing Authority,* 268 F.3d 76 (2d Cir. 2001). The Second Circuit analyzed several Supreme Court cases that required abstention under the tribal exhaustion rule and concluded that "the reasoning of these cases and the policy considerations that underlie them militate in favor of the opposite result in this case: the comity and deference owed to a tribal court that is adjudicating an intra-tribal dispute under tribal law does not compel abstention by a federal court where a non-member asserts

**West Page 282**

state and federal claims and nothing is pending in the tribal court." *Id.* at 80.

Here, the factors do not indicate that exhaustion of tribal remedies would be appropriate. First, it does not appear that a tribal forum exists for resolution of this controversy. 28 U.S.C. § 1338 provides for exclusive federal court jurisdiction over the plaintiffs' copyright claims. *See* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."). Additionally, as in *Garcia,* there is currently no tribal proceeding pending, *see Garcia* 268 F.3d at 83, the plaintiffs are not members of the tribe they are suing, *see id.,* and the plaintiffs' copyright claim is grounded in federal law, as opposed to tribal law. Accordingly, notwithstanding the "policy of supporting tribal self-government and self-determination, the recognition that a federal court's exercise of jurisdiction over matters relating to reservation affairs can . . . impair the authority of tribal courts, and the view that tribal courts play a vital role in tribal self-government," the Court declines to ignore its "virtually unflagging obligation . . . to exercise [its] jurisdiction." *Id.* at 82 (internal quotation marks and citations omitted). Accordingly, the Court declines to dismiss the plaintiffs' claim for injunctive relief on the basis of exhaustion.

**IV. Conclusion**

As noted above, the defendants Bell and Campisi's motion to dismiss [Doc. # 71] is GRANTED IN PART and DENIED IN PART and the defendants Corporation, Association, and Directors' motion for summary judgment [Doc. # 85] is GRANTED. The only remaining defendants are Bell and Campisi, and only with regard to the plaintiffs copyright claim for injunctive relief.

SO ORDERED this ___ day of August 2002, at Hartford, Connecticut.

[fn1] The 1636-38 Pequot War was "the first major conflict between colonists and an indigenous New England people." *Mashantucket Pequot Tribal Nation Timeline,* at http://www.mashantucket.com/history — timeline.html (last visited July 22, 2002). In 1637, in retaliation for the murder of a powerful English settler and earlier conflicts, the colonies of Connecticut and Massachusetts attacked a fort of the Pequot tribe in Mystic, Connecticut, killing nearly all of the inhabitants — approximately 600 Pequots. The war continued until September 1638 when the few surviving Pequots signed the Treaty of Hartford. Those surviving Pequots were forbidden to return to their villages or use the tribal name and were divided between the Native allies of the English — the Mohegans and the Narragansetts — or placed into slavery among English colonists. *See id.*

[fn2] Bell and Campisi did not join in the motion for summary judgment.

[fn3] In their original opposition to the defendants' motion for summary judgment, the plaintiffs state that summary judgment is

appropriate as to the Corporation and its directors and members, in light of the defendants' sworn affidavits that the Corporation is no longer active and was not involved with the development, construction or operation of the Museum. *See* Pls.Mem. Opp'n Mtn. Summ.J. at 4-5. In their supplemental memorandum in opposition to the motion to dismiss and motion for summary judgment, the plaintiffs state that summary judgment is also appropriate as to the Association and its directors and members (except McBride), but do not expressly state the reason for this concession.

[fn4] In their supplemental memorandum in opposition to the motion to dismiss and motion for summary judgment, the plaintiffs requested that the Court grant leave to amend the complaint to sue McBride in his personal capacity. The plaintiffs may move to amend their Second Amended Complaint to add McBride as a defendant. However, if McBride were added as a defendant, the defendants may move to dismiss the claims against him, and this opinion would be relevant to that motion.

[fn5] The facts are taken from the plaintiffs' Second Amended Complaint.

[fn6] The Second Amended Complaint is unclear as to the relationship between Debra Bassett and Bassett Entertainment Corporation. However, that lack of clarity does not affect the conclusions in this opinion.

[fn7] Also prior to October 20, 1995, Burdeau and Merrill stopped writing for Bassett and pursuant to the defendants' direction, began to develop and produce a film about the Pcquot War without Bassett's involvement, as noted *supra* in the text.

[fn8] In November, 1995, Bassett registered this script with the Copyright Office. In February 1997, Eckert assigned to Bassett any interest he had in the "script scenarios", and in March, Bassett registered these scenarios with the Copyright Office as well.

[fn9] The Court disagrees with the defendants' contention (based on a fair reading of the Second Amended Complaint) that the plaintiffs have *only* sued Bell and Campisi in their individual capacities and as officers, representatives, and/or agents of *the Corporation and Association.* The Court finds that the Second Amended Complaint indicates that the plaintiffs have also sued Bell and Campisi in their official capacities as officers, representatives, and/or agents of the Tribe. Those latter claims, and the individual capacity claims, are addressed *infra.*

[fn10] Bell and Campisi do not, however, raise the issue of the Tribe as an indispensable party. Accordingly, though the issue was remanded to the Court for consideration, the Court does not reach this issue.

[fn11] Bell and Campisi correctly recognize that exhaustion "is required as a matter of comity, not as a jurisdictional prerequisite," and thus, is not a ground for dismissal under Fed.R.Civ.P. 12(b)(1). *Garcia v. Akwesasne Housing Authority,*

268 F.3d 76, 80 (2d Cir. 2001).

[fn12] According to the Second Circuit in *Garcia,* there are at two qualifications to obtaining such prospective injunctive relief against tribal officials sued in their official capacity. "First, any law under which [the plaintiffs] seek[] injunctive relief must apply substantively to the agency. . . . Second, [the plaintiffs] must have a private cause of action to enforce the substantive rule." *Garcia,* 268 F.3d at 88. The defendants do not dispute that both conditions are satisfied in the instant case as to the federal copyright claim.

[fn13] As the plaintiffs do not request injunctive relief with regard to their state law causes of action, the Court does not address the applicability of the *Ex parte Young* analysis to such claims.

[fn14] The Supreme Court made a similar point in *Monroe v. Pape,* 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), where the Court considered whether § 1983 applied to Chicago police officers who broke into the plaintiff's home, subjected his family to humiliation by making them stand naked in the living room, and ransacked the house. The Court held that the officers' conduct was "under color of law" for purposes of § 1983, notwithstanding that the conduct was not authorized by the state and violated state law, because that a contrary definition of "Under color of law" would immunize state officers from § 1983 liability whenever they violate state or federal law.

[fn15] Indeed, the "beyond the scope of his authority" exception in the Second Circuit's holding in *Doe* was not based on the illegal or unconstitutional nature of the prosecutor's actions, but rather upon the nature of the actions as "plainly beyond the prosecutor's jurisdiction." *See Doe,* 81 F.3d at 1210 (prosecutor's demand that plaintiff participate in religious ceremony was not a prosecutorial function, but was beyond a prosecutor's jurisdiction). Here, the plaintiffs merely allege that Bell and Campisi's actions violated state and federal law, not that such actions were "manifestly or palpably" outside of Bell and Campisi's duties as directors of the Museum or performed in the "clear absence of all jurisdiction." *Id.* Rather, as the affidavits submitted by the defendants conclusively indicate, the alleged actions predicating the plaintiffs' claims against Bell and Campisi were taken pursuant to Bell and Campisi's delegated authority as directors of the Museum. Additionally, as the defendants point out, the plaintiffs' complaint does not allege that Bell and Campisi were acting on their own account or for their own personal benefit.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved