UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MERRY CHARTERS, LLC and | : | NO.:  3:02CV336 (MRK) |
| CARL SHILLO | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF STONINGTON, STONINGTON | : | |
| PLANNING & ZONING COMMISSION, | : | |
| ZONING BOARD OF APPEALS OF THE | : | |
| TOWN OF STONINGTON, EDWARD T. | : | |
| SULLIVAN and GEORGE THAYER | : | APRIL 1, 2004 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

I.    **BACKGROUND AND FACTS:**

A.    **Introduction**

This case was brought in Connecticut Superior Court by Complaint dated

February 4, 2002, and timely removed to this Court on February 26, 2002 (Doc. #1).

The operative Complaint is the Second Amended Complaint dated July 25, 2003 (Doc.

# 35) ("Complaint").  Plaintiffs are Carl Shillo and Merry Charters, LLC.  Mr. Shillo is

the sole member of the LLC. (As used in this Memorandum, "plaintiff" shall include

both Mr. Shillo and the LLC).  This case arises out of the denials of two applications

(one denied without prejudice) made to the Stonington Planning and Zoning

Commission ("Commission") for a special use permit, and a subsequent application for a variance made to the Stonington Zoning Board of Appeals ("ZBA").  Plaintiff has brought this §1983 action alleging violations of his substantive due process and equal protection rights and also brings a common law claim of negligent infliction of emotional distress.

Defendant Thayer was the Chairman of the Commission and defendant Sullivan was the Chairman of the ZBA at the time of plaintiff's applications.  Significant discovery has been completed, including the depositions of the plaintiff and five Town officials.  Plaintiff deposed Joe Larkin, the Zoning Enforcement Officer; Edward Donnelly, the former Town Planner who served at the time of plaintiff's first application to the Commission; Mary Villa, who served as the Town Planner at the time of plaintiff's second application to the Commission, and defendants Thayer and Sullivan.

The plaintiff's substantive due process claim fails as a matter of law because plaintiff had no property interest in the permit and variance.  The sworn deposition testimony, as well as the sworn affidavits made by George Thayer, Edward Sullivan, Joe Larkin, Mary Villa, Commission members Robert Granato and Daniel Lyon, and ZBA member Ben Tamsky, show that the defendants are entitled to summary judgment on plaintiff's equal protection claim because he was not treated differently than any similarly situated applicant.  In addition, defendants Thayer and Sullivan are entitled to absolute immunity or, in the alternative, qualified immunity.  Plaintiff's

2

common law claim of negligent infliction of emotional distress is barred by the applicable statute of limitations and governmental immunity, pursuant to C.G.S. § 52-557n.

      **B.**    <u>**History of Plaintiff's Applications**</u>

In the summer of 2000, plaintiff began operating a commercial tour boat business in Noank, Connecticut.  After problems arose at the location, he moved the boat to a dock on the Mystic River in downtown Mystic, within Stonington, Connecticut. **Exhibit A**, Deposition Transcript of Carl Shillo, p.41, ln. 20- p.42, ln.7  The boat named the "Mystic Belle" was operated from a dock located behind the S&P Oyster House restaurant.  <u>Id</u>.  See also **Exhibit B,** site plan.  The dock was owned by Gerval, Inc., which is a business name of Robert Valenti, **Exhibit C,** Deposition of Joe Larkin, p. 102, ln. 7-10.

In the 1980's, Mr. Valenti owned a large piece of property on Holmes Street on which he had a car dealership. <u>Id</u>., p. 104, ln 22- p. 105, ln. 18.  In the late 1980's, he developed the restaurant and the condominiums. <u>Id</u>.; **Exhibit D**, Condominium Site Plan.  The dock runs from behind the restaurant and continues behind the condominiums.  <u>Id</u>. The condominium development designated the dock as part of condominium "unit #17".  <u>Id</u>.; See also **Exhibit E**, Condominium Declaration.  A "visual easement" of the Mystic River was also deeded in favor of the Town. <u>Id</u>.  There has been a stipulation on the use of the dock, in that it could not be used as a commercial

dock without permits.  See **Exhibit C**, p. 233, ln 5-15.  In the summer of 2000, Mr. Valenti and S&P Oyster Company applied for a special use permit to have an outdoor patio.  **Exhibit F**.  This permit was granted, but on the stipulation that there would be no increase in the seating capacity.  Id.  Again, a stipulation was entered that any commercial use of the dock would require a special use permit.  Id.

At about the same time, the Plaintiff signed a lease for use of the dock and began operations without seeking the requisite approval from the Commission. **Exhibit A**, p.43, ln 5-9; p.36, ln 12-16.

In June 2000, Joe Larkin, the Zoning Enforcement Officer was advised by Attorney Mark Kepple that there was a commercial cruise boat located at the dock. **Exhibit C**, p.87 – 88, ln. 12.  Attorney Kepple inquired whether the plaintiff had applied for any permit.  Id.  Mr. Larkin determined that no permit had been applied for, and went to the dock to discuss the matter with Mr. Shillo. Mr. Larkin also issued a notice of violation/ request for voluntary compliance.  **Exhibit C**, p. 102, n. 13- 24.  **Exhibit G**. Notice of Violation.  Mr. Larkin asked the plaintiff about parking.  **Exhibit A**, p. 19, ln. 2-6.  The plaintiff met with Mr. Donnelly and Mr. Larkin and was advised he needed a special use permit.  Id., p. 36, ln. 12-16.  He agreed to make application to the Commission. Id., p. 37, ln. 2    Mr. Larkin never issued a cease and desist order, and held any enforcement action in abeyance to allow the plaintiff to continue his operation during the summer 2000 season even though he waited over six weeks to apply after

he was advised to do so.  **Exhibit H**, Affidavit of Joe Larkin.  Mr. Donnelly suggested

that it may be easier for the plaintiff to apply as an accessory use to S&P Oyster

Company, and to talk to them about parking.  **Exhibit A**, p. 40, ln. 10-20.  Had he

applied as an accessory use, he could have used the restaurant parking.  **Exhibit I**,

Transcript of Public Hearing 10/5/00, p. 47, ln 3-11.

Plaintiff applied for a special use permit on August 11, 2000.  **Exhibit J**,

Application # 0044SUP.  A public hearing was held on October 5, 2000 and October

17, 2000.  The Department of Environmental Protection raised concerns regarding

plaintiff's operation.  **Exhibit K**, Letter to Mr. Donnelly from DEP dated September 28,

2000.  In addition, the plaintiff provided no parking for his customers or employees.

**Exhibit L**, Memo to Commission from Ed Donnelly dated October 4, 2000; **Exhibit B**,

Site Plan.  The boat's capacity was 57 passengers, 3 crew members and the captain.

**Exhibit I,** p. 20, ln. 24- p.21, ln 3.

Mr. Donnelly recommended that the application be denied without prejudice

because the plaintiff did not provide any parking for himself, his customers or

employees.  Id., p.43, ln3 - p. 44, ln. 9; p. 47, ln 3-11; **Exhibit L**.  The Commission

asked Mr. Donnelly to determine the number of parking spaces required for his use so

that plaintiff would be aware of the requirement.  **Exhibit I**, p. 46, ln. 8-9.  The

regulations did not specifically list what the parking requirements were for tour boats.

Id., p. 47, ln. 12-15.  The regulations did provide that parking spaces shall be provided

in sufficient number to accommodate the motor vehicles of all occupants, employees, customers and any others normally visiting the premises at any one time as may be required by the Commission.  **Exhibit M**, Transcript of Public Hearing 10./17/00, p. 10, ln 20- p.11, ln. 5.  The Commission thought that requiring one for one was too much, so the standard for restaurants was applied, so that the plaintiff needed 15 parking spaces for his operation: twelve (12) for customers, which was calculated as one for each four customers and an additional three (3) spaces, one for each employee.  Id., p. 11, ln 6-22.    Due to the DEP concerns and lack of parking, the Commission voted on  October 17, 2000 to deny plaintiff's application without prejudice.  **Exhibit N**, Letter to Merry Charters from Donnelly dated October 18, 2000.

Plaintiff submitted another application to the Commission on November 16, 2000.  **Exhibit O**, Application # PZ0064SUP.  The DEP submitted a letter to the Commission stating that its concerns were addressed by the new application. **Exhibit P**, Letter to Commission from DEP dated 12/22/00.   As to parking, plaintiff proposed to lease 15 spots from St. Patrick's Church for himself, his employees and his customers.  **Exhibit Q**, Letter to Shillo from Linda Morales dated 10/12/00; **Exhibit R**, Site Plan dated November 11, 2000.  St. Patrick's church was located approximately 1200-1300 feet from the dock.  **Exhibit S**, Memo to Commission from Mary Villa dated 5/15/01.  Mr. Donnelly  testified that this proposal was not ideal, but he thought it was the best the plaintiff could do.  **Exhibit T**, Deposition Transcript of

Edward Donnelly, p. 37, ln 18-25.

Plaintiff requested that the Commission use its discretion under the regulations to reduce the on-site parking requirements to zero. **Exhibit U**, Transcript of Public Hearing 3/20/01, p.164-165. Before the public hearing, Mr. Donnelly left the City and Ms. Villa became the Town Planner. **Exhibit V**, Deposition Transcript of Mary Villa, p.23, ln 18-20.) During the hearing process, the Commission requested an opinion from the Town Attorney as to an interpretation of the regulations. **Exhibit W**, Letter to Attorney Londregan dated 2/12/01.) On behalf of the Commission, Ms. Villa sent a letter to Attorney Thomas Londregan. Id. The public hearing was continued until a response from Attorney Londregan was received. **Exhibit X** and **Exhibit Y**, Minutes. Attorney Londregan advised that the Commission may, but was not required, to grant the permit under Section 7.10.2,. and advised that if approved, significant stipulations may be warranted. **Exhibit Z**, Letter to Ms. Villa from Attorney Londregan dated 3/12/01.) Input on the application was received from other Town departments. The Board of Police Commissioners recommended that the application be denied due to parking problems and traffic congestion in downtown Mystic. **Exhibit AA**.

The application was considered on May 15, 2001. Ms. Villa recommended that the plaintiff's application be denied and set forth her analysis in a memo to the Commission. **Exhibit S**. One of the Commission members, Robert Granato, also submitted a memo to the Commission (which he had done on numerous occasions)

outlining why he thought the application should be denied.  **Exhibit BB; Exhibit CC,**

Affidavit of Robert Granato.  The plaintiff's application was denied by a vote of 3-2.

**Exhibit DD**, Notice of Decision.  Members Thayer, Lyon and Granato voted to deny

the application and members Strunk and Morrisson voted to approve.  Id.

The plaintiff appealed the Commission's denial to the Connecticut Superior

Court on June 4, 2001.  **Exhibit EE,** Connecticut Superior Court Complaint.  On June

15, 2001, the plaintiff then applied to the Zoning Board of Appeals for a variance from

the parking regulations, requesting that its number of parking spaces be reduced to

zero.  **Exhibit FF,**  Application; **Exhibit GG**, Transcript of Public Hearing 8/14/01,

p. 18.  When the Commission became aware of plaintiff's application to ZBA, it

became concerned and advised Ms. Villa.  Id.  **Exhibit HH**, Villa Affidavit; **Exhibit II**,

Letter to Attorney Londregan dated 6/22/01.  The Commission requested Ms. Villa to

contact the Town Attorney on their behalf.  Id.  The Commission later requested that

Ms. Villa prepare a memo to the ZBA outlining that the Commission had just reviewed

an application by the plaintiff and was opposed to ZBA granting a variance.  Id.  The

Commission was concerned that the application to the ZBA was a way around the

decision of the Commission.  Id.  Ms. Villa prepared a memo for the Commission,

which was reviewed by the Town Attorney and supplemented by the Town Attorney

before it was sent to the ZBA.  **Exhibit JJ**, Draft memo sent to Attorney Londregan

dated 7/20/01; **Exhibit KK**, Letter to Ms. Villa from Attorney Londregan.  The first

paragraph of the memo stated:

> Merry Charters has requested a variance for parking requirements. The Planning & Zoning Commission recently denied a special use permit to this applicant for failure to provide parking. The decision is being appealed. This application to the ZBA appears to be an end run around the litigation and around the Planning & Zoning Commission….

It concluded:

> [W]e are very concerned about the potential outcome of a ZBA decision in favor of this applicant or any applicant who fails to provide parking to support their proposed use. If you have any questions please contact the Town Attorney. **Exhibit LL**.

The ZBA received the memo, but it had no bearing on its decision.

**Exhibit MM**, Deposition of Sullivan, p. 36, ln. 24 – p. 37, ln. 20. A public hearing was held before the ZBA on August 14, 2001. **Exhibit GG**. The ZBA asked Mr. Larkin how many parking spaces the plaintiff needed for his business. Mr. Larkin advised that it was unclear, but if one used the standard for marinas, at least one would be required. Id. Plaintiff's request was denied on September 11, 2001, by a vote of three in favor and two opposed as a supermajority is required to approve variances.

**Exhibit NN**, Notice of Decision; **Exhibit MM**, p. 34, ln. 14. Chairman Sullivan and member Ben Tamsky voted to deny the request, with members Yacovino, O'Boyle and Mershon voting to approve. The denial was due to a lack of any parking. The ZBA stated as its reason that "commercial ventures require at least one parking spot." Id.

In 1993, the ZBA had denied a request by another applicant, "Southern

Exposure" whose property was also located at the corner of Holmes and East Main streets, who had proposed a retail shop and tourist information center/ gazebo. Attached as **Exhibit OO** is the Application #93-31; Attached as **Exhibit PP** is the applicant's letter to abutters describing the project; Attached as **Exhibit QQ** is the ZBA Record of Decision dated 11/ 9/ 93.  For reference, this property is the triangular lot denoted N/F Mystic Flag Committee on Merry Charter's site plans.  Interestingly, the Valentis opposed Southern Exposure's application because of not providing any parking and noted parking problems in downtown Mystic.  See **Exhibit RR,** Letter to ZBA from Robert Valenti dated 9/13/93.  Mr. Sullivan voted to deny Southern Exposure's application.  **Exhibit QQ**.

Plaintiff also appealed the ZBA's decision to Connecticut Superior Court.  Both appeals were dismissed because plaintiff could not show aggrievement, as he did not own the dock and did not have a lease to use the dock.  Id.  **Exhibit SS**, Merry Charters v. Stonington Planning & Zoning Commission; **Exhibit TT**, Merry Charters v. Stonington ZBA.  Plaintiff no longer owns the Mystic Belle and does not have a lease for the use of the dock.  **Exhibit A**, p. 50, ln. 13-14.

## C.    Allegations of the Complaint

Plaintiff's complaint was brought in Five Counts.  Count One is brought against the Commission and alleges a violation of the equal protection clause under the federal and state constitutions.  Plaintiff alleges that the Commission acted arbitrarily

and with malice and selectively enforced its regulations

Count Two is brought against the ZBA claiming selected enforcement and that it acted with malice and arbitrarily "in refusing to apply Section 7.10.2."

Count Three is brought against the former Commission Chairman, George Thayer and the ZBA Chairman, Edward Sullivan.  As against Chairman Thayer, plaintiff alleges his constitutional rights have been violated for "encouraging" the Commission to selectively refuse to apply the zoning regulations as requested by the plaintiff.  Complaint, Count Three, ¶ 4.  As against ZBA Chairman Sullivan, plaintiff alleges he violated his constitutional rights when "he denied Merry Charters appeal from the Commission's denial of its application for a variance."

Count Four, brought against all the defendants and incorporating all the paragraphs of the preceding counts, claims the defendants violated the plaintiff's substantive due process rights.

Count Five, also brought against all defendants and incorporating all the preceding counts, including Count Four, claims the defendants are liable for negligent infliction of emotional distress as to Mr. Shillo.   Defendants' pled absolute immunity and qualified immunity on behalf of defendants Thayer and Sullivan in their Answer to Second Amended Complaint, as well as governmental immunity at common law and pursuant to C.G.S. § 52-557n on behalf of all defendants to plaintiff's claim for negligent infliction of emotional distress.

D.    **Stonington Zoning Regulations**

The Town of Stonington first enacted its regulations in 1961.  The regulations rest the commission with discretionary authority to grant special use permits under certain circumstances.  **Exhibit UU**, excerpt of Zoning Regulations, Section 6.4.  Parking regulations are contained in Section 7.10.  Parking on site is generally required.  7.10.1.2  "Parking spaces shall be provided in sufficient number to accommodate the motor vehicles of all occupants, employees, customers, and any others normally visiting the premises at any one time as may be required by the Commission." 7.10.4

However, alternatives may be granted by the commission.  7.10.2.  This section states, "In DB-5, CS-5, LS-5 and RH-10 Districts, the total parking requirement may be reduced by an amount equal to the public parking area immediately adjacent to the site, or an amount or area deemed proper for that use in question by the Commission.  The Commission shall use the findings from Special Use Permit requirements as guidelines."

The ZBA is granted the discretionary authority for deciding whether a variance of the regulations may be granted.  Section 8.10.  In deciding whether to grant a variance, the ZBA must take the considerations of granting a special use permit into account.  8.10.3  In granting a variance, the ZBA must find that the configuration of the property upon which the variance is based is such that its use, under strict interpretation of the regulations for the zone in which the property is located, is unreasonably limited for any and all permitted uses.  Id.

## II.    LAW AND ARGUMENT

### A.    Summary of Argument

The plaintiff's case against the Commission rests on the theory that the Commission violated his constitutional rights by not using its discretionary authority to allow the plaintiff to reduce his on-site parking requirements to zero, and approve his requests to allow his customers and employees to park at St. Patrick's Church, located approximately 1200-1300 feet from the dock.  Similarly, the plaintiff's claim against the ZBA is that it violated his constitutional rights when it denied his request for a variance from the parking regulations to reduce his required on-site parking to zero.  There is absolutely no evidence that the Commission or the ZBA has permitted an applicant to develop or run a business without having any parking on-site.  In fact, a prior, similar

request made to the ZBA was also denied.  **Exhibit QQ**.  The fact that the plaintiff could not find an appropriate site to run his business does not mean his constitutional rights were violated.

Plaintiff cannot show that he had a constitutionally protected property interest in the permit, as the Zoning regulations granted discretion to the Commission as to whether to grant a permit.  Likewise, the ZBA had discretion as to whether to grant the variance.  Thus, plaintiff had no "clear entitlement" to the relief requested, defeating his substantive due process claim.

Plaintiff's equal protection claim fails because: (1) the only similarly situated applicant who requested their parking requirements be reduced to zero was denied a variance; (2) Other businesses that may have been permitted to reduce their on-site parking requirements are not similarly situated or were not treated differently because they (a) had on-site parking and (b) only <u>employees</u> were permitted to park in an lot adjacent to the site or directly across the street; (3) there is no evidence any of the Commission or ZBA members who voted to deny plaintiff's applications acted with malice or a bad faith intent to injure him; and (4) Plaintiff cannot prove the decisions were "wholly arbitrary."

Defendants Thayer and Sullivan are also entitled to absolute immunity for their actions and involvement in the denial of plaintiff's permits.  In the alternative, they are entitled to qualified immunity because plaintiff cannot show a violation of a clearly

established constitutional right and their actions were not objectively unreasonable.

Finally, plaintiff's common law claim of negligent infliction of emotional distress is

barred by the statute of limitations as to the Commission and defendant Thayer; and

also barred by governmental immunity as to all defendants.

### B.    Summary Judgment Standard.

Federal Rule of Civil Procedure 56(c) requires the entry of Summary

Judgment". . . if the pleadings, depositions, answers to interrogatories, and admissions

on file together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  A

factual dispute is "genuine" when the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-248, 106 S.Ct. 2505, 2510, 91 Ed.2d 202 (1986).  A "material fact" is one

whose resolution will affect the ultimate determination of the case.  Id.  In determining

whether a material issue of fact exists, the court must resolve all ambiguities and draw

all inferences against the moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524,

1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246

(1991).  However, "the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no genuine issue of material fact."  Samuels v. Smith,

839 F.Supp. 959, 962 (D.Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations

or denials of his pleading, but . . . must set forth specific facts showing that there is a

genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. at

2510; see also, Knight v. United States Fire Insurance Co., 804 F.2d 9, 12 (2d Cir.

1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v.

Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Thus, once

the moving party has satisfied its burden of identifying evidence which demonstrates

the absence of a genuine issue of material fact, the non-moving party is required to go

beyond the pleadings by way of affidavits, depositions, and answers to interrogatories

in order to demonstrate specific material facts which give rise to a genuine issue.

Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265

(1986).  "Neither courts nor defendants should be subjected to trials which can be little

more than harassment."  Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir.

1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party

must produce evidence to show the existence of every element essential to the case,

which it bears the burden of proving at trial.  Equimark Commercial Finance Co. v.

C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).  Where evidence is

submitted in support of, or in opposition to, a motion for summary judgment, such

evidence must be presented in a manner consistent with its admissibility at trial.  See

First National Bank of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th

Cir. 1979)(in ruling on summary judgment motion, the District Court properly relied on

documents and exhibits identified by affidavit).  Unsworn statements of the parties,

letters addressed to litigants from third persons, and hearsay, which does not fall

under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of

Evidence, may not properly be considered.  See Adickes v. S.H. Kress & Co., 398

U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Security

Services, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stasny

Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

     **C.**    **Qualified Immunity Generally.**

     Qualified Immunity shields public officials from suits for damages under 42

U.S.C. § 1983, unless their actions violate clearly-established rights of which an

objectively reasonable official would have known.  Saucier v. Katz, 533 U.S. 194

(2001);. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Ricciuti v. N.Y.C. Transit

Authority, 124 F.3d 123, 127 (2d Cir. 1997).  The doctrine of qualified immunity shields

government officials from liability for civil damages as a result of their performance of

discretionary functions, and serves to protect government officials from the burdens of

costly, but insubstantial, lawsuits.  Harlow, 457 U.S. at 817-18; Lennon v. Miller, 66 F.

3d 416, 420 (2d. Cir. 1995).  This policy is justified in part by the concern that the "fear of personal monetary liability and harassing litigation will duly inhibit officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638 (1987).  This doctrine "'strikes a balance between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury.'" Poe v. Leonard, 282 F.3d 123 (2d Cir. 2002), citing Locurto v. Safir, 263 F. 3d 154, 162-3 (2d Cir. 2001).

Overcoming qualified immunity is a two-part process.  Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).  First, the plaintiff must allege the violation of a clearly-established constitutional or statutory right. Id. Second, qualified immunity will only be denied if a reasonable official should have known that the challenged conduct violated that established right.  Id. at 142-143, citing Rodriguez v. Comas, 888 F.2d 899, 901 (1st Cir. 1989).  In other words, "even where the plaintiff's federal rights and the scope of the permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Id., Lennon, 165 F.3d at 420, citing Anderson, 483 U.S. at 641.  "The objective reasonableness test is met—and the defendant is entitled to immunity –if 'officers of reasonable competence could

disagree' on the legality of the defendant's action." <u>Thomas</u>, 165 F.3d at 143, citing

<u>Lennon</u>, 66 F.3d at 420.

**D.    Standard for Summary Judgment on Qualified Immunity.**

In evaluating a motion for summary judgment on the basis of qualified immunity,

the Court must, as a threshold matter, inquire whether, construing the facts most

favorably to the plaintiff, 'the facts alleged show the officer's conduct violated a

constitutional right.' <u>Poe v. Leonard</u>, 282 F.3d 123, 132 (2002), citing <u>Saucier v. Katz</u>,

533 U.S. 194 (2001).  If so, the Court must determine whether the right in question

was clearly established at the time the violation occurred, in other words, whether "'it

would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted.'" <u>Id</u>.  The second inquiry has been further refined, and qualified immunity is

established when '(a) the defendant's action did not violate clearly established law, or

(b) it was objectively reasonable for the defendant to believe that his action did not

violate such law.'" <u>Id</u>., citing <u>Teirney v. Davidson</u>, 133 F. 3d 189, 196 (2d Cir. 1998).

> As the Supreme Court has explained, the 'concern of the immunity
> inquiry is to acknowledge that reasonable mistakes can be made as
> to the legal constraints on particular conduct....if the officer's
> mistake as to what the law requires is reasonable, however, the
> officer is entitled to' immunity.  Thus, if the court determines that the
> only conclusion a rational jury could reach is that reasonable
> officers would disagree about the legality of the defendant's
> conduct under the circumstances, qualified immunity applies.

<u>Id</u>., (citations omitted).

**E.      Plaintiff's Claim for Injunctive Relief Has Become Moot.**

Due to a change in factual circumstances, the plaintiff's claim for injunctive relief in the nature of issuing his permit to operate a tour boat from the S&P Oyster House dock is moot.  Plaintiff has no current legal interest in the dock from which he operated the boat on the Mystic River, and thus, lacks the requisite personal interest in the outcome of the litigation.  See generally, Moore's Federal Practice § 101.94 [1]-[2].  As required by Article III of the Constitution the exercise of judicial power by federal courts "depends upon the existence of a case or controversy." North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (internal quotation marks omitted); 31 Foster Children v. Bush, 329 F.3d 1255, 1263 (11th Cir. 2003), petition for cert. filed, 72 U.S.L.W. 3171 (U.S. Sep. 2, 2003) (No. 03-351). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." 31 Foster Children, 329 F.3d at 1263 (internal quotation marks and citation omitted). More specifically, a case becomes moot "when the issues presented are no longer `live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969); 31 Foster Children, 329 F.3d at 1263.

The "legally cognizable interest" or "personal stake" requirement derives from Article III's case or controversy limitation, which restricts the jurisdiction of federal courts "to disputes capable of judicial resolution." <u>U.S. Parole Comm'n v. Geraghty</u>, 445 U.S. 388, 396 (1980). "The `personal stake' aspect of mootness doctrine [ ] serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving." <u>Id</u>. at 397, 100 S.Ct. at 1209. <u>Cameron-Grant v. Maxim Healthcare Svcs.</u>, 347 F.3d 1240 (11th Cir. 2003) " `Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects.' " <u>Renne v.Geary</u>, 501 U.S. 312, 320-21 (1991). Federal courts must dismiss moot cases "to avoid advisory opinions on abstract propositions of law." <u>See</u> <u>Hall v. Beals</u>, 396 U.S. 45, 48 (1969) (per curium).

A case is moot when a plaintiff who had standing to commence an action in federal court because he had a sufficient personal stake in the dispute at its inception gives up that stake in the course of the litigation. <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971). Mootness focuses on whether the plaintiff maintains an interest in the outcome of the dispute that is sufficient to continue the action. <u>Lewis v. Cont'l Bank Corp.</u>, 494 U.S. 472, 477 (1990); see also <u>U.S. Parole Comm'n v. Geraghty</u>, 445 U.S. 388, 397 (1980)(stating that when plaintiff gives up interest entitling him to sue, case is moot). This concept of mootness is thus related to the "redressibility" prong of Article III standing.

Plaintiff cannot demonstrate that he can operate his tour boat from the S&P Oyster Company dock if the court were to order the Town to issue the permit he applied for.  Plaintiff does not own the dock at issue in this case and has no current lease for the dock to operate a tour boat business.  **Exhibit A**.  Neither does plaintiff currently own a boat.  Id.  It is wholly speculative that plaintiff would be able to secure another lease from the dock owner or be able to secure a boat that could operate in the waters of the Mystic River.  For similar reasons, the Connecticut Superior Court denied his appeals because he could not show he was "aggrieved".  See **Exhibit SS** and **Exhibit TT**.  Similar to the issue of mootness, aggrievement requires the plaintiff to show a specific, personal and legal interest in the subject matter of the decision.  Id.  In denying plaintiff's appeals, the Court held, "As plaintiff has no legal interest in the subject dock, any order by this court that plaintiff be granted a permit would be advisory only.  The owner of the dock at issue in this case, Gerval, Inc., is not a party.  The plaintiff's lease lapsed on October 31, 2000." Id.

Likewise, any decision on the injunctive relief requested in this case would be advisory only.  Therefore, defendants are entitled to judgment as a matter of law on plaintiff's claim for injunctive relief.

22

**F.    Plaintiff's Substantive Due Process Claim Fails Because He Has No Constitutionally Protected Property Interest.**

In the local land use arena, the Second Circuit has reminded that federal courts are for the adjudication of <u>constitutional</u> disputes, and that they do not sit as "zoning boards of appeal to review non-constitutional land-use determinations by the [C]ircuit's many local legislative and administrative agencies." <u>Sullivan v. Town of Salem</u>, 805 F. 2d 81, 82 (2d Cir. 1986).

In order to succeed on a substantive due process claim, plaintiff must demonstrate that the defendants, while acting under color of law, deprived him of a constitutionally protected property interest in a manner that is was so outrageously arbitrary as to constitute a gross abuse of governmental authority. <u>Natale v. Ridgefield</u>, 170 F.3d 258, 262-3 (2d Cir. 1999). In order to establish a constitutionally protected property interest, plaintiff must demonstrate that he was "clearly entitled" to a special use permit. <u>Id</u>., see also <u>Harlen Associates Inc. v. Village of Mineola</u>, 273 F.3d 494 (2d Cir. 2001); <u>Crowley v. Courvile</u>, 76 F.3d 47 (2d Cir.1996). This "strict entitlement test" focuses on whether the deciding authority has any discretion to exercise in making its decision, i.e. whether the authority is required to issue it upon the ascertainment that certain objectively ascertainable criteria have been met. <u>Id</u>. If there is any discretion at all in the municipal body to grant or deny a permit, then plaintiff will not have a constitutionally protected property interest, and his substantive

due process claim fails as a matter of law.  Uncertainty as to the meaning of applicable

law also suffices to defeat a claim of entitlement.  Natale, 170 F.3d at 263.

In Zahra v. Town of Southold, the Second Circuit explained the role of the

federal court in local land use disputes, as follows:

> We believe that this standard [the strict entitlement test]
> appropriately balances the need for local autonomy, with
> recognition of constitutional protection at the very outer margins of
> municipal behavior.  It represents an acknowledgment that
> decisions on matters of local concern should ordinarily be made by
> those whom local residents select to represent them in municipal
> government—not by federal courts.  It also recognizes that the Due
> Process Clause does not function as a general overseer of
> arbitrariness in state and local land-use decisions; in our federal
> system, that is the province of the state courts.  Zahra v. Town of
> Southold,  48 F.3d 674, 680 (2d Cir. 1995).

In Crowley v. Courville, the Second Circuit held that the plaintiff's substantive

due process claim failed because the zoning board had discretion in whether to grant

plaintiff request for a parking variance.  In so doing, the Court reviews the applicable

regulations to determine whether discretion exists.  Id.

1.  The special use permit procedures grant discretion to the commission.

Under the Town of Stonington's zoning regulations, before a special use permit

is granted, the Commission is guided by the following considerations and must find

that:

> the proposal is adequately served by a sufficient water supply, and
> sanitary facilities will function without pollution; that the public is
> fully protected by fire, safety and security equipment designs to

> eliminate hazards; that transportation services are adequate and no undue traffic generation will result that would cause a deleterious effect on the local welfare or the safety of the motoring public; that it will not create, at any point of determination as set forth in Articles II and VII, any dangerous or objectionable elements to area residents; that no adverse effect will result to the character of the district, property values, historic features, prosperity, nor to the public health, safety and welfare of the residents of the area or the Town; that no deleterious impact to irretrievable environmental resources will result; all application regulations (State, Federal and local) have been complied with satisfying all design, procedural and review requirements; and consistency with Stonington Plan of Development and all amendments thereto.

Zoning Regulations, 6.4, **Exhibit UU**.  The Commission has to power to approve, deny or modify any proposal and set forth special stipulations of approval or modification.

Id. at 6.5.  In addition, plaintiff invoked Section 7.10.2 to request a reduction to zero of his total off-street parking requirement.  This section also contains discretionary language as follows:

> Reductions.  In DB-5, … Districts, the total parking requirement **may** be reduced by an amount equal to the public parking area immediately adjacent to the site, or an amount or area deemed property for that use by the Commission.  The Commission shall use the findings from Special Use Permit requirements as guidelines.

"May" is by its term, discretionary.  See Waterbury v. Washington, 260 Conn. 506, 531, 800 A.2d 1102 (2002); Seals v. Hickey, 186 Conn. 337, 345-47, 441 A.2d 604 (1982).  Therefore, plaintiff's substantive due process claim against the Commission in Count Four, fails as a matter of law.

2.  The ZBA also has discretion to grant variances.

Plaintiff applied to the ZBA for a variance.  The review done by the Zoning

Board of Appeals in determining whether to grant a variance is likewise discretionary,

defeating plaintiff's substantive due process claim.  Section  8.10.3 of the Zoning

Regulations covers variances.  This section provides that the ZBA may grant

variances:

> where there is difficult or unreasonable hardship, but not economic
> hardship, in the way of carrying to the strict letter of the Zoning
> Regulations, the Zoning Board of Appeals shall have power in a
> specific case to vary the application of any bulk provision of the
> ordinance, if such variance will be in harmony with the general
> purpose and intent of the public healthy, safety and welfare will be
> served an substantial justice done.

See also C.G.S. § 8-3.

In Crowley v. Courville, supra, the Second Circuit held that whether to grant a

variance was discretionary, defeating plaintiff's substantive due process claim.

**G.  Plaintiff's § 1983 claims against individual defendants Thayer and
Sullivan are barred by absolute immunity.**

Absolute judicial immunity from suit under §1983 is not reserved for judges

alone, but is granted to any person performing judicial or quasi –judicial acts.  Butz v.

Economou, 438 U.S. 478 (1978).  In this case, the individual Chairmen acted in a

quasi-judicial capacity in reviewing plaintiff's application for a special use permit and

application for a zoning variance.

26

The principles of absolute immunity were recently discussed by Judge Arterton in an opinion where she granted summary judgment to a police officer on a § 1983 claim where the plaintiff alleged that the officer had set an excessive bail, on the basis of absolute immunity.  Clynch v. Chapman, No. 3:01cv1685 (JBA) (September 30, 2003).  Judge Arterton recited the law concerning absolute immunity, as follows:

> It is well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages. Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999).  The critical inquiry focuses on the nature of the act being performed and not on the status of the individual performing it.  See Forrester v. White, 484 U.S. 219, 224 (1988)("It is the nature of the function performed, not the identity of the actor who performed it, that informed our immunity analysis."); see also Cleavinger v. Saxner, 474 U.S. 193, 201 (1985)(quoting Butz v. Economou, 438 U.S. 478, 511 (1987)("Absolute immunity flows not from rank of title or location within the Government,"…but from the nature of the responsibilities of the individual official.")  Thus, judicial immunity may extend to parole board officials who serve in a quasi-adjudicative function in deciding whether to grant, deny, or revoke parole, see Montero, 171 F.3d 757, but not to a judge who performs administrative, legislative or executive functions, such as discharging an employee, see Forrester, 484 U.S. at 229.

> Under this functional approach, the Court examines, "the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and..seek[s] to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions."  Id. at 224. To facilitate this analysis, the Second Circuit has extracted a two-part test from the Supreme Court's decision in Stump v. Sparkman, 435 U.S. 349 (1978), to determine whether a judge (or other official performing a judicial function) is entitled to absolute immunity: "First, a judge will not be deprived of immunity because the action he took was in

> error, was done maliciously, or was in excess of his authority;
> rather, he will be subject to liability only when he has acted in the
> clear absence of all jurisdiction…[;][s]econd, a judge is immune
> only for actions performed in his judicial capacity." Tucker v.
> Outwater, 118 F.3d 930, 933 (2d. Cir. 1997)(quotation and citation
> omitted)(emphasis in original); see also Montero, 171 F. 3d at 761
> n.2.

In the above case, Judge Arterton found the police officer's duty in setting bail
was quasi-judicial in nature, entitling him to immunity.  The hallmark factor to be
considered is whether the officer exercised "independent judgment."  Id.  Judge
Arterton found that the officer did exercise the requisite judgment, shown by the
officer's duties which included interviewing the detainee to obtain relevant information
and then weighing the information to set bail.  Id.

In reviewing an application for a special use permit, a zoning commission holds
public hearings, and receives information from the applicant and members of the
public.  **Exhibit UU**, Section 6.1, 8.9  A commission applies the applicable regulations
to the case before it, as well as considering the standards for special use permits.  Id.
The commission then exercises its discretion in whether to grant the permit.  Similarly,
the ZBA has certain duties delegated to it under state law and the zoning regulations.
In so doing, it must consider the factors used for granting a special permit.  Id.  Thus,
the Commission and ZBA member exercise the required "independent judgment" for
which absolute immunity attaches.

Furthermore, numerous courts have held the individuals making these types of land use decisions are entitled to immunity.  For example, the Ninth Circuit has held that members of a growth management board which reviewed land use decisions were entitled to absolute immunity concerning compliance with the State of Washington's Growth Management Act.  Buckles v. King County, 191 F. 3d. 1127 (9th Cir. 1999). Citing Butz , supra, the Ninth Circuit stated:

> [t]he doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.  Accordingly, the 'touchstone' for the doctrines' applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.' When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le'] to those of judges—that is, because they, too, 'exercise a discretionary judgment' as part of their function. Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-36 (1993).

See also, Hyatt v. Town of Lake Lure, 225 F. Supp. 2d 647, 657 (W.D.N.C. 2002) (The decisions of the Town Council members to deny [plaintiffs'] petition and appeal are quasi-judicial…  As such the individual council members who voted against plaintiffs' appeal have absolute immunity from suit in their individual capacities based on these decisions); Collinson v. Gott, 895 F.2d 994 (4th Cir. 1990) (commissioner absolutely immune for action taken at public meeting organized to discuss reorganization of county government); Winslow v. Town of Holderness Planning Board, 480 A.2d 114, 116 (N.H. 1984) (planning board's consideration of application for subdivision is quasi-

judicial); Richards v. Ellis, 233 A.2d 37 (Me. 1967) (absolute immunity extended to licensing board for quasi-judicial decisions).

Public policy considerations are also present in this case.  Clynch, supra, at 16. Fear of personal liability should not be permitted to interfere with the Commission and ZBA's  judicial function to determine whether an applicant has met the pertinent standards.  Furthermore, an appeal may be filed in Superior Court challenging the decisions (just as the plaintiff did in this case), which provides additional protections to the applicant, rather than suing, individually, the persons making the decision.  See Butz, supra at 512.

For these reasons, defendants Thayer and Sullivan are entitled to judgment as a matter of law on plaintiff's § 1983 claims on the basis of absolute immunity.

**H.    Plaintiff's Equal Protection Claims Fail as a Matter of Law because He Was Not Treated Differently than Similarly Situated Persons, Nor is There is Evidence of a Malicious or Bad Faith Intent to Injure; and the Decisions were not Without a Rational Basis.**

Plaintiff also alleges a violation of his equal protection rights in Counts One, Two and Three.  The equal protection guarantee extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of governmental officials.   Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 502 (2nd Cir. 2001); Crowley v. Courville, 76 F.3d 47(2nd Cir. 1996); Village of Willlowbrook v. Olech, 528 U.S. 562, 564 (2000)(per curium); see

also <u>African Trade & Info. Ctr., Inc., v. Abromaitis</u>, 294 F.3d 355, 362-63 (2nd Cir. 2002). To state a claim the plaintiff must allege that the defendants intentionally treated them differently from others similarly situated and that no rational basis existed for the difference in treatment.  <u>African Trade</u>, 294 F. 3d at 362-63. <u>Olech</u> left open the question of whether malice or bad faith must be shown to state a valid "class of one" equal protection claim.  <u>Gavlak v. Somers</u>, 3:02 CV 410 (GLG)(June 13, 2003). Though the Second Circuit has not resolved that question, it has made clear that the plaintiff challenging a zoning board's decision, at a minimum, would be required to show that the decision was 'irrational and wholly arbitrary', in other words, that there was 'no legitimate reason for its decision'" <u>Id</u>.  Thus, a party asserting a "class of one" claim must show (1) that he was treated differently than others similarly situated, and that this disparate treatment was (2) irrational and wholly arbitrary and (3) intentional. <i>See</i> <u>Giordano v. City of New York</u>, 274 F.3d 740, 751 (2d Cir. 2001) citing <u>Olech</u>, 528 U.S. at 565.  In addition, before liability may attach for equal protection based upon malicious intent, plaintiff must prove that a majority of the members of the Commission or the ZBA were motivated by bad faith intent to injure him.  See, <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1343-44 &n.5 (11th Cir. 1994)(finding single council member did not have the authority to establish municipal policy and refusing to infer discriminatory intent from the silence of remaining council members, citing <u>U.S. v. City of Yonkers</u>, 856 F.2d 444 (2d Cir. 1988)).  The plaintiff bears the burden of

establishing that he was selectively treated as compared to others similarly situated.
LeClair, supra, 627 F.2d at 609-10.

    "The requirement imposed upon plaintiffs claiming an equal protection violation
[is that they] identify and relate specific instances where persons situated similarly in
all relevant aspects were treated differently…." Dartmouth Review v. Dartmouth
College, 889 F2d 13 19 (1st Cir. 1989)… Rubinovitz v. Rogato, 60 F3d 906, 910 (1st
Cir. 1995)(Emphasis in original; internal quotation marks omitted.)  "If no other similarly
situated individuals exist, then the plaintiff has no claim for equal protection."
Tuchman v. State of Connecticut, 185 F. Supp 2d 169,173 (Conn. 2002).

    "The court's duty to determine whether the defendants have offered a rational
basis for the difference in the plaintiff's treatment `is not a license for courts to judge
the wisdom, fairness, or logic of legislative choices.'" Batiste v. City of New Haven, 239
F. Supp.2d 213, 228 (D.Conn. 2002), quoting FCC v. Beach Communications, Inc.,
508 U.S. 307, 313 (1993).  Accordingly, governmental decisions enjoy "a strong
presumption of validity," Heller v. Doe by Doe, 509 U.S. 312, 319 (1993), and should
be upheld if there is "any reasonably conceivable state of facts that could provide a
rational basis for the classification." Gavlak v. Somers, supra.

    Plaintiff cannot show as a matter of law, that he was treated differently than
other similarly situated applicants.  Plaintiff's claim fails because there is no evidence
that the Commission granted any other special use permit or used Section 7.10.2 to

reduce on-site parking requirements where the applicant provided **<u>zero</u>** on-site spaces.  There is no evidence that the Zoning Commission has ever approved a special use permit that provided no on-site parking for a business or approved a permit where all the parking was over 1200 feet away from the site.  **Exhibits BB, CC, HH, VV** and **WW**. **Exhibit V**, p 90, ln 24 - p. 91, ln 9.

In addition, the memo from Mr. Granato to the Commission details his concerns that if the Commission granted the plaintiff's application, they would need to grant other applications that did not provide any on-site parking. It also cites several other examples where the Commission required on-site parking, and distinguished the arrangements permitted in the past by the Commission to the plaintiff's proposal.  The Commission had allowed some off-site parking arrangements in the past, but only for businesses that also had on-site parking, and the off-site parking was only for the <u>employees</u> of the business, not the customers.  **Exhibit BB**.  Plaintiff is not similarly situated to those businesses.

There is also no evidence that the ZBA has permitted a variance of the zoning regulations to reduce the required on-site parking spaces to zero.  **Exhibits QQ, XX** and **YY**.   In fact, in 1993 the ZBA <u>denied</u> a similar application that requested elimination of all on site parking requirements.  **Exhibit QQ**.

Plaintiff has provided no specific evidence of being treated differently.  Plaintiff's claim is based on the assertion that other downtown businesses have been permitted

to reduce the number of on-site and off-street parking spaces pursuant to Section

7.10.2 by including the adjacent on-street parking spaces. Complaint, Count One,

¶ 11. This regulation provides that "The total parking requirement may be reduced by

an amount equal to the public parking area immediately adjacent to the site, or an

amount or area deemed proper for that use in question by the Commission."

However, plaintiff never requested similar relief.  His site plan and ultimate request

was to permit all of his parking off-site, several blocks away.  He did not propose on-

street spaces to be counted.

At his deposition, plaintiff was questioned as to the basis for his equal

protection claims.  **Exhibit A**.  He listed several businesses he considered to be

"similarly situated," including a bed and breakfast, Trader Jack's restaurant, Anthony

J's restaurant, S &P Oyster House restaurant, Bravo Bravo restaurant, John's Tavern

and the Hoxie Hotel.  Id., p. 89-92.

All the examples cited by Mr. Shillo differ in at least one relevant respect.  All

the businesses mentioned have on-site parking.  As to the Hoxie Hotel, Mr. Shillo

believed he was similarly situated because the hotel was permitted to use on-street

public parking as part of its parking requirements.  Id.,  p. 92.  Plaintiff's counsel asked

Ms. Villa about the Hoxie Hotel at her deposition.  **Exhibit V**.  She testified that the

Hotel had on-site parking.  Id., p. 73, ln. 23 – p. 74, ln. 18.

34

S&P Oyster House has on-site parking, and even refused to allow the plaintiff to park there because they were being "closely scrutinized" by the planning and zoning commission with respect to their own parking.  **Exhibit A**, p. 41, ln. 4 - 12.  Trader Jack's actually withdrew an application which Ms. Villa was recommending be denied due to inadequate parking during the summer of 2001, the same time frame as plaintiff's application.  Id., p. 91, ln 17, p. 92, ln. 17.  In addition, as Mr. Donnelly explained at the first public hearing on the first application, other area businesses have been constrained due to parking requirements.  **Exhibit I**, p. 43, ln 20- p. 44. ln. 1.

Plaintiff had no specific information concerning the parking circumstances regarding John's Tavern or the Bed & Breakfast or Bravo Bravo Restaurant. **Exhibit A**, p.93, ln. 17- p. 94, ln. 25.  He had no specific information regarding other sites, except that there was on-site parking.  Id., p. 97, ln 22- p. 100, ln. 7.

 Plaintiff also claims that that the defendants treated him differently than another cruise boat, the Mystic River Queen.  However, procedurally, the Mystic River Queen application differed from the plaintiff's.  Plaintiff applied for a special use permit from the Commission and applied for a variance from the ZBA.  The Mystic River Queen had made application to the ZBA to determine the number of parking spaces it required in 1990. **Exhibit A**.  The ZBA determined that 3-4 **on-site** spaces were required.  Id.  Plaintiff, as indicated, proposed to have all of his parking off-site, several blocks away.  Id., Thus, the Mystic River Queen was not similarly situated, but

to the extent it was, the commission had a ZBA precedent (not a Commission precedent) that on-site parking was required.

As to the second prong of the analysis, plaintiff cannot prove that the Commission's decision was without any rational basis.  The Commission denied plaintiff's  application due to lack of adequate parking, which was justified by documented and well-known parking problems in downtown Mystic.  For example, cited in Ms. Villa's memo to the Commission, and included in the record, was the letter to the Commission from the Board of Police Commissioners, which advised it was opposed to the plaintiff's application because of a lack of adequate parking in the downtown area.  **Exhibits S** and **AA**.  Information from the police department also noted an increase in parking violations in the summers of 1999 and 2000.  It also sought advice from its Town Counsel, who advised that the Commission could, if it found plaintiff's proposal was adequate, reduce the on-site parking requirement.  However, it was not required to do so.

Ms. Villa recommended that Trader Jack's application, pending at the same time, should be denied due to inadequate parking.  **Exhibit ZZ**, Memo to Commission from Mary Villa re Trader Jack's Restaurant dated July 17, 2001.  She employed the exact same interpretation of Section 7.10.2 in recommending denial that she did for Merry Charters.  Her memo "question[ed] the validity of the application of ZR 7.10.2 [to the] situation", which is verbatim her language used in the memo addressing the Merry

Charters' application.  Id.  See also **Exhibits S** and **AAA**, Memo to Commission from

Mary Villa re Trader Jack's restaurant dated June 28, 2001.  She acknowledged that

although on-street spaces may have been permitted as part of a prior application, it

should not be considered, as "the applicant has no assurance or control over any of

the off-site public parking spaces"  and  advised that "[a]pproval of the complicated

parking program proposed by the applicant would almost certainly contribute to the

well-documented congestion and parking problems in downtown Mystic."  Id.  She also

testified the commission was generally concerned about parking.  **Exhibit V**, p. 57, ln

2-5.  All this evidence provides ample justification for the Commission's action under a

rational basis review.  Plaintiff's application was not the only one that received scrutiny

regarding parking.

Furthermore, there is no evidence of malice.  The denial in and of itself does not

show malice.  See Harlen, supra. Any hostility against the application is insufficient to

sustain an equal protection claim.  Id.  The Commission could have denied plaintiff's

first application outright, which, under the regulations, would have precluded him from

reapplying for a year.  **Exhibit UU**, Section 9.4.5.  Instead, they denied without

prejudice and allowed the plaintiff to reapply.

As previously discussed, the Plaintiff alleges that some the on-street spaces

may have been counted more than once, suggesting that he should also be able to

count them toward his quota.  Even assuming this occurred, it is not enough to show

malice.  The fact that the Commission may have inadvertently granted permits where the site plans designated an on-street parking spot in the same location as a site plan several years prior does not require, for equal protection purposes, that the plaintiff be expressly permitted to count all the on-street parking for its business (had he even requested this), when the Commission became aware that those spots have been counted for other area businesses' parking requirements.  The Town Planner specifically advised the Commission that the on-street parking on Holmes street, which plaintiff now suggests he should have been permitted to use, was already accounted for.  When Trader Jack's application was reviewed during the same time, Ms. Villa recommended denial due to lack of adequate parking and stated that any parking that was on the street should not be considered as counting toward Trader Jack's parking requirements because the spaces were always filled.  **Exhibits ZZ, AAA**.

Plaintiff does claim that the fact that Mr. Thayer signed a memo to the ZBA indicating the commission's opposition to the variance request, showed malice. However, the Commission consulted with counsel before so doing, and the language included was drafted in part by counsel.  Several witnesses testified that it was not unusual for Town officials to provide input on applications.  **Exhibit T**, p. 48, ln 3-15., **Exhibit V**, p. 57, ln. 6-15.  Caselaw shows it is not unusual for Planning and Zoning Commissions and ZBA's to be at odds with each other or for a commission to be concerned about erosion of its powers, especially where variances are concerned.

There are a plethora of cases where a Town commission has sued the Town ZBA for

granting variances, because the granting of a variance impacts the Commission's

authority to enforce the zoning regulations.  In Town of Lisbon P&Z Comm. V. Town of

Lisbon ZBA, the tension between these two regulatory bodies was described as

follows:

> The essential purpose of the ZBA, insofar as its power to grant
> variances is concerned, is to furnish some elasticity in the
> application of regulatory measures so that they do not operate in an
> arbitrary, unreasonable or confiscatory manner, or in any manner
> which would be unconstitutional. Astarita v. Liquor Control
> Commission, 165 Conn. 185,189 (1973). The statutory and
> regulatory scheme which establishes planning and zoning naturally
> entails a certain amount of conflict between the Commission and
> the ZEO on one side and the ZBA on the other. The Commission
> has enacted zoning regulations in accordance with the provisions of
> General Statutes § 8-2. The object of zoning is to adopt means to
> regulate property uses in conformance with a comprehensive plan
> in a manner to advance the public welfare. George LaCava & Sons,
> Inc. v. Town Plan & Zoning, 154 Conn. 309, 311 (1966). A variance
> authorizes a land owner to use his property in a manner prohibited
> by the zoning regulations. Talarico v. Conklin, 168 Conn. 194, 198
> (1975).

 2000 Ct. Sup. 7476, 27 CLR 474 (J.D. of New London at Norwich)(June 19, 2000);

See, e.g. North Stonington v. North Stonington, 1998 Ct. Sup 1829, 23 CLR 131

(August 24, 1998)(Appeal to Superior Court by P&Z Commission of variance granted

by ZBA); Bovier  v. Zoning Board of Appeals, 28 Conn. Supp. 278 (1969)(same; P&Z

commission is "aggrieved" by decision of ZBA granting variance);East Hartford

Planning & Zoning Commission v. East Hartford ZBA, 2002 Ct. Sup. 6712 (May 17,

2002)(Appeal by P&Z, but court determined P&Z not aggrieved).

 Interestingly, North Stonington v. North Stonington was an appeal made by a

planning commission from the decision of the Town's ZBA granting a variance to an

applicant for relief from the parking regulations.  The applicant, an owner of a

professional center, had as one of his tenants the Manshantucket Pequot Gaming

Enterprise, which is an entity of the Mashantucket Pequot Tribe which operates a

casino in a neighboring town employing large numbers of people.  Id, 1835-36.  On

occasion, when parking problems arise in connection with casino employees, Pesch

allows employees of the casino operation who do not work at the professional center

in North Stonington to park their vehicles in the professional center's parking lot.  Id.

The employees were transported to their place of employment at the casino in the

neighboring town by bus.  Id. At the hearing before the ZBA, an attorney for the ZEO

and P&Z Commission appeared in opposition to the granting of a variance.

 The Court described the variance process as follows:

 Variances are, in a sense, the 'antithesis of zoning.'  Zoning is
 regulation by the municipality of the use of land within the
 community, and the buildings and structures which may be located
 thereon, in accordance with a general plan.  The General Statutes
 authorize such regulation of land and the use of buildings.  Such
 regulations, however, must be applied uniformly throughout each
 district.  A variance disrupts the conformity and constitutes

> permission to act in a manner that is otherwise prohibited by the zoning regulations.  Simko v. Ervin, 234 Conn. 498, 505-06 (1995).
>
> The two basis conditions which must be met for the granting of a variance are (1) the variance bust be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan.  Grillo v. Zoning Board of Appeals, 206 Conn. 362, 368 (1988).  Id.

Summary judgment is therefore appropriate, even though the plaintiff holds a subjective belief that he was treated unfairly.

Plaintiff's application was marginally denied by a vote of 3-2 on May 15, 2001. The fact that plaintiff was denied a permit was the result of the inadequacy of the particular site he chose, not because his constitutional rights were violated.  Plaintiff has no unfettered "right" to operate from any site he elects.  Therefore, plaintiff's equal protection claim must fail.

I.   **Plaintiff's Equal Protection Claim Against the ZBA also Fails as Matter of Law.**

After plaintiff's application for a special use permit was denied by the Commission, he applied for a variance from the parking regulations to the ZBA. Pursuant to state statute and the zoning regulations, the ZBA can only grant variances upon a showing of hardship.  A two-thirds vote is required to approve any variance. Plaintiff presented his case to the ZBA at the public hearing held on August 14, 2001. At its regular meeting on September 11, 2001, the ZBA's decision was to deny the

application because "no parking provided—commercial ventures require at least one designated spot." Three members voted in favor of the plaintiff—James Yacovino, Thomasine O'Boyle and John Mershon. Two members—defendant Edward Sullivan and Ben Tamsky, voted to deny the application.

Plaintiff was not treated differently. A similar application that requested a waiver of all on-site parking was denied. **Exhibit QQ**. There is nothing incongruous about the ZBA's handling of plaintiff's application, and the mere fact of denial does not show the decision was wholly arbitrary or malicious. Variances are not to be routinely granted. Id. Variances are not appropriate merely because the zoning regulations hinder the landowner from putting them to a more profitable use. Dolan v. Zoning Board of Appeals, supra, 156 Conn. 430. The granting of variances must be reserved for unusual or exceptional circumstances. Ward v. Zoning Board of Appeals, 153 Conn. 141, 1145 (1965). Thus, there was a rational basis. There is no evidence of malice. Therefore, defendants are entitled to summary judgment on plaintiff's equal protection claim.

      **J.**      **The Individual Defendants are Entitled to Qualified Immunity.**

Plaintiff claims that Thayer violated his constitutional rights by sending a memo to Mr. Sullivan, the chairman of the ZBA, regarding the action taken by the Commission and the Commission's recommendation that the application at the ZBA be denied. This action violates no constitutional provision and the alleged illegality of

42

this action was not "clearly established."  Defendants are aware of no caselaw establishing a constitutional violation under these circumstances.  See, Saucier v. Katz, supra.  Thus, the defendants are entitled to qualified immunity because the plaintiff cannot prove a violation of a clearly established constitutional right by defendant Thayer's action in sending a memo to the ZBA.

In addition, defendant Thayer's action was not objectively unreasonable in light of the existing law.  Again, the fact that there is no caselaw establishing a constitutional violation is important to the inquiry of whether Thayer could have reasonably known that the alleged action in signing the memo violated plaintiff's constitutional rights.  Saucier v. Katz, supra.  Furthermore, boards and commissions give their input on various zoning applications as necessary. It is not unusual to do so. The memo was made part of the administrative record as part of the public hearing, and the plaintiff had an opportunity to respond to it.  The memo was not sent without consulting with the town attorney regarding the language.  The Town Attorney even drafted some of the language.  As set forth previously in this memorandum, it is not unusual for a Commission to object to the granting of a variance, even to the point of suing the ZBA or appealing a ZBA decision.  Therefore, in light of existing law, it was not objectively unreasonable for Mr. Thayer, as Chairman of the Commission, to send the memo on its behalf.

Likewise, defendant Sullivan is entitled to qualified immunity.  The only allegation specifically against Sullivan is that he voted to deny plaintiff's application for a variance.  Defendants concede that the plaintiff had a clearly established right to be free from governmental decisions that are without any rational basis and arbitrary in the constitutional sense.  See, Olech, Natale, and Zahra.  However, Mr. Sullivan's vote to deny plaintiff's application was not so objectively unreasonable as to defeat qualified immunity. Again, the question is whether Mr. Sullivan would have known that his conduct was unlawful in the situation he confronted.  Saucier, 533 U.S. at 202; see also, Hale O Kaula Church v. Maui Planning Commission, 229 F.Supp. 2d 1056 (D. Hawaii 2002)(granting qualified immunity to local planner).   It is undisputed that local land use boards have broad powers.  Schad v. Borogh of Mount Ephraim, 452 U.S. 61, 68 (1981).  Under state law variances are to be granted sparingly and local land use agencies are granted wide latitude.  A decision is only overturned by the Connecticut Superior Court only if it is arbitrary.  In addition, Mr. Sullivan was on the board when, as previously discussed, the applicant "Southern Exposure" applied for a variance from all on-site parking requirements.  He voted to deny that application also. Therefore, given Mr. Sullivan's consistent decisions, it cannot be said that he would have known, objectively, that a denial in this case would have violated plaintiff's rights. Even officials that make mistakes are entitled to qualified immunity unless they cross the line into clear incompetence.  Provost v. City of Newburgh, 262 F.3d 146 (2d Cir.

2001) ("This forgiving standard protects `all but the plainly incompetent or those who knowingly violate the law, quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).  Even assuming Mr. Sullivan held some sort of hostility toward the plaintiff is not enough to defeat qualified immunity.   <u>Sound Aircraft Servs, Inc. v. East Hampton</u>, 192 F.3d 329, 334 (2d Cir. 1999) ("qualified immunity may shield a defendant from liability `even when the official conduct is motivated, in part, by hostility to the plaintiff.'")(quoting <u>Crawford-El v. Britton</u>, 523 U.S. 574, 591, 118 S.Ct. 1584, 1593, 140 L. Ed.2d 759 (1998)).  Therefore, Sullivan is also entitled to summary judgment on plaintiff's §1983 claims on the basis of qualified immunity.

### K.    Plaintiff's Claim of Negligent Infliction of Emotional Distress is Barred by the Statute of Limitations.

Count  Five  of the Complaint also alleges a common law cause of action for negligent infliction of emotional distress.  As the Court is well aware, there is a two-year statute of limitations on negligence actions in Connecticut.  See, C.G.S. § 52-584. The Zoning Commission, of which Chairman Thayer was a part, denied plaintiff's second application for a permit on May 15, 2001. See Second Amended Complaint, Count One, ¶ 10.   Plaintiff's Amended Complaint dated July 25, 2003 asserting this new claim is thus untimely against the Commission and defendant Thayer.

**L.    Plaintiff's Claim of Negligent Infliction of Emotional Distress is Barred by the Doctrine of Governmental Immunity.**

Notwithstanding the issue of the statute of limitations, plaintiff's action is based

upon the discretionary actions of the public officials for the Town of Stonington in

denying plaintiff a permit to operate his business and refusing to vary provisions of the

parking regulations.  C.G.S. § 52-557n(B)(7) clearly states that an action may not lie

under these circumstances:

> …a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from:…(7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety….

See also, Hennessey v. Puglisi, 1993 Ct. Sup. 4997, Superior Court, J.D. Hartford/

New Britain at Hartford (Wagner, J.)(May 18, 1993) (Zoning Board of Appeals'

decisions are discretionary); Maier v. Tracy, 1992 Ct. Sup. 7990, Superior Court, J.D.

of Danbury (Fuller, J.)(August 25, 1992)(Enforcement of zoning regulations is

discretionary); Stewart v. Gothie, 2000 Ct. Sup. 3979, Superior Court, J.D. of New

London at New London (Hurley, J.)(April 13, 2000)(same).

In addition, C.G.S. § 52-557n(c) also bars any individual liability for negligence by the Chairman of the Planning and Zoning Commission or the Chairman of the Zoning Board of Appeals:

> Any person who serves as a member of any board, commission, committee or agency of a municipality and who is not compensated for such membership on a salary or prorated equivalent basis, shall not be personally liable for damage or injury occurring on or after October 1, 1992, resulting from any act, error or omission made in the exercise of such person's policy or decision-making responsibilities on such board, commission, committee or agency if such person was acting in good faith, and within the scope of such person's official functions and duties, and was not acting in violation of any state, municipal or professional code of ethics regulating the conduct of such person…. The provisions of this subsection shall not apply if such damage or injury was caused by the reckless, willful or wanton misconduct of such person.

Thus, all defendants are entitled to judgment as a matter of law on the plaintiff's claim of negligent infliction of emotional distress on the basis of governmental immunity.

III.    **CONCLUSION**

For the foregoing reasons, defendants are entitled to summary judgment on all

counts of the Complaint.

<div style="margin-left:45%">

DEFENDANTS,
TOWN OF STONINGTON,
STONINGTON PLANNING & ZONING
COMMISSION, TOWN OF STONINGTON
ZONING BOARD OF APPEALS,
EDWARD SULLIVAN and
GEORGE THAYER


By_____
   Melinda A. Powell
   ct17049
   Howd & Ludorf
   65 Wethersfield Avenue
   Hartford, CT  06114
   860 249-1361
   (860) 249-7665 (Fax)
   mpowell@hl-law.com

</div>

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 1st day of April, 2004.

Frank J. Szilagyi, Esquire
Josephine A. Spinella, Esquire
Silvester & Daly
72 Russ Street
Hartford, CT  06106

_____
Melinda A. Powell