UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MERRY CHARTERS, LLC and<br>CARL SHILLO | : | NO.:  3:02CV336 (MRK) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF STONINGTON, STONINGTON<br>PLANNING & ZONING COMMISSION,<br>ZONING BOARD OF APPEALS OF THE<br>TOWN OF STONINGTON, EDWARD T.<br>SULLIVAN and GEORGE THAYER | :<br>:<br>:<br>:<br>: | <br><br><br><br>APRIL 1, 2004 |

## LOCAL RULE 56(a)1 STATEMENT

Pursuant to Rule 56(a)1 of the Local Rules of Civil Procedure, the defendants, Town of Stonington, Stonington Planning & Zoning Commission, Zoning Board of Appeals of the Town of Stonington, Edward T. Sullivan and George Thayer respectfully submit the following statement of undisputed material facts in support of its Motion for Summary Judgment.

    1.     In the summer of 2000, plaintiff began operating a commercial tour boat business in Noank, Connecticut.  **Exhibit A**, Deposition Transcript of Carl Shillo, p.41, ln. 20- p.42, ln.7

    2.     After problems arose at the location, he moved the boat to a dock on the Mystic River in downtown Mystic, within Stonington, Connecticut. Id.

    3.     The boat named the "Mystic Belle" was operated from a dock located behind the S&P Oyster House restaurant.  Id.  See also **Exhibit B,** site plan.

    4.     The dock was owned by Gerval, Inc., which is a business name of

Robert Valenti, **Exhibit C,** Deposition of Joe Larkin, p. 102, ln. 7-10.

     5.     In the 1980's, Mr. Valenti owned a large piece of property on Holmes Street on which he had a car dealership. Id., p. 104, ln 22- p. 105, ln. 18.

     6.     In the late 1980's, he developed the restaurant and the condominiums. Id.; **Exhibit D**, Condominium Site Plan.

     7.     The dock runs from behind the restaurant and continues behind the condominiums. Id.

     8.     The condominium development designated the dock as part of condominium "unit #17". Id.; See also **Exhibit E**, Condominium Declaration.

     9.     A "visual easement" of the Mystic River was also deeded in favor of the Town. Id. There has been a stipulation on the use of the dock, in that it could not be used as a commercial dock without permits. See **Exhibit C**, p. 233, ln 5-15.

     10.     In the summer of 2000, Mr. Valenti and S&P Oyster Company applied for a special use permit to have an outdoor patio. **Exhibit F**.

     11.     This permit was granted, but on the stipulation that there would be no increase in the seating capacity. Id.

     12.     Again, a stipulation was entered that any commercial use of the dock would require a special use permit. Id.

     13.     At about the same time, the Plaintiff signed a lease for use of the dock and began operations without seeking the requisite approval from the Commission. **Exhibit A**, p.43, ln 5-9; p.36, ln 12-16.

     14.     In June 2000, Joe Larkin, the Zoning Enforcement Officer was advised by Attorney Mark Kepple that there was a commercial cruise boat located at the dock. **Exhibit C**, p.87 – 88, ln. 12.

     15.    Attorney Kepple inquired whether the plaintiff had applied for any permit.  Id.

     16.    Mr. Larkin determined that no permit had been applied for, and went to the dock to discuss the matter with Mr. Shillo. Mr. Larkin also issued a notice of violation/ request for voluntary compliance.  **Exhibit C**, p. 102, n. 13-24.  **Exhibit G**. Notice of Violation.

     17.    Mr. Larkin asked the plaintiff about parking.  **Exhibit A**, p. 19, ln. 2-6.  The plaintiff met with Mr. Donnelly and Mr. Larkin and was advised he needed a special use permit.  Id., p. 36, ln. 12-16.

     18.    He agreed to make application to the Commission. Id., p. 37, ln. 2

     19.    Mr. Larkin never issued a cease and desist order, and held any enforcement action in abeyance to allow the plaintiff to continue his operation during the summer 2000 season even though he waited over six weeks to apply after he was advised to do so.  **Exhibit H**, Affidavit of Joe Larkin.

     20.    Mr. Donnelly suggested that it may be easier for the plaintiff to apply as an accessory use to S&P Oyster Company, and to talk to them about parking.  **Exhibit A**, p. 40, ln. 10-20.

     21.    Had he applied as an accessory use, he could have used the restaurant parking.  **Exhibit I**, Transcript of Public Hearing 10/5/00, p. 47, ln 3-11.

     22.    Plaintiff applied for a special use permit on August 11, 2000.  **Exhibit J**, Application # 0044SUP.

     23.    A public hearing was held on October 5, 2000 and October 17, 2000.  **Exhibits I, M.**

     24.    The Department of Environmental Protection raised concerns regarding plaintiff's operation.  **Exhibit K**, Letter to Mr. Donnelly from DEP dated

3

September 28, 2000.

25. In addition, the plaintiff provided no parking for his customers or employees. **Exhibit L**, Memo to Commission from Ed Donnelly dated October 4, 2000; **Exhibit B**, Site Plan.

26. The boat's capacity was 57 passengers, 3 crew members and the captain. **Exhibit I,** p. 20, ln. 24- p.21, ln 3.

27. Mr. Donnelly recommended that the application be denied without prejudice because the plaintiff did not provide any parking for himself, his customers or employees. Id., p.43, ln3 - p. 44, ln. 9; p. 47, ln 3-11; **Exhibit L**.

28. The Commission asked Mr. Donnelly to determine the number of parking spaces required for his use so that plaintiff would be aware of the requirement. **Exhibit I**, p. 46, ln. 8-9.

29. The regulations did not specifically list what the parking requirements were for tour boats. Id., p. 47, ln. 12-15.

30. The regulations did provide that parking spaces shall be provided in sufficient number to accommodate the motor vehicles of all occupants, employees, customers and any others normally visiting the premises at any one time as may be required by the Commission. **Exhibit M**, Transcript of Public Hearing 10./17/00, p. 10, ln 20- p.11, ln. 5.

31. The Commission thought that requiring one for one was too much, so the standard for restaurants was applied, so that the plaintiff needed 15 parking spaces for his operation: twelve (12) for customers, which was calculated as one for each four customers and an additional three (3) spaces, one for each employee. Id., p. 11, ln 6-22.

32. Due to the DEP concerns and lack of parking, the Commission

voted on October 17, 2000 to deny plaintiff's application without prejudice. **Exhibit N**, Letter to Merry Charters from Donnelly dated October 18, 2000.

33. Plaintiff submitted another application to the Commission on November 16, 2000. **Exhibit O**, Application # PZ0064SUP.

34. The DEP submitted a letter to the Commission stating that its concerns were addressed by the new application. **Exhibit P**, Letter to Commission from DEP dated 12/22/00.

35. As to parking, plaintiff proposed to lease 15 spots from St. Patrick's Church for himself, his employees and his customers. **Exhibit Q**, Letter to Shillo from Linda Morales dated 10/12/00; **Exhibit R**, Site Plan dated November 11, 2000.

36. St. Patrick's church was located approximately 1200-1300 feet from the dock. **Exhibit S**, Memo to Commission from Mary Villa dated 5/15/01.

37. Mr. Donnelly testified that this proposal was not ideal, but he thought it was the best the plaintiff could do. **Exhibit T**, Deposition Transcript of Edward Donnelly, p. 37, ln 18-25.

38. Plaintiff requested that the Commission use its discretion under the regulations to reduce the on-site parking requirements to zero. **Exhibit U**, Transcript of Public Hearing 3/20/01, p.164-165.

39. Before the public hearing, Mr. Donnelly left the City and Ms. Villa became the Town Planner. **Exhibit V**, Deposition Transcript of Mary Villa, p.23, ln 18-20.)

40. During the hearing process, the Commission requested an opinion from the Town Attorney as to an interpretation of the regulations. **Exhibit W**, Letter to Attorney Londregan dated 2/12/01.)

41. On behalf of the Commission, Ms. Villa sent a letter to Attorney Thomas Londregan. Id.

42. The public hearing was continued until a response from Attorney Londregan was received. **Exhibit X** and **Exhibit Y**, Agenda.

43. Attorney Londregan advised that the Commission may, but was not required, to grant the permit under Section 7.10.2,. and advised that if approved, significant stipulations may be warranted. **Exhibit Z**, Letter to Ms. Villa from Attorney Londregan dated 3/12/01.)

44. Input on the application was received from other Town departments. The Board of Police Commissioners recommended that the application be denied due to parking problems and traffic congestion in downtown Mystic. **Exhibit AA**.

45. The application was considered on May 15, 2001. **Exhibit DD,** Notice of Decision.

46. Ms. Villa recommended that the plaintiff's application be denied and set forth her analysis in a memo to the Commission. **Exhibit S**.

47. One of the Commission members, Robert Granato, also submitted a memo to the Commission (which he had done on numerous occasions) outlining why he thought the application should be denied. **Exhibit BB; Exhibit CC,** Affidavit of Robert Granato.

48. The plaintiff's application was denied by a vote of 3-2. **Exhibit DD.**

49. Members Thayer, Lyon and Granato voted to deny the application and members Strunk and Morrisson voted to approve. Id.

50. The plaintiff appealed the Commission's denial to the Connecticut Superior Court on June 4, 2001. **Exhibit EE,** Connecticut Superior Court

Complaint.

51.     On June 15, 2001, the plaintiff then applied to the Zoning Board of Appeals for a variance from the parking regulations, requesting that its number of parking spaces be reduced to zero.  **Exhibit FF,**  Application; **Exhibit GG**, Transcript of Public Hearing 8/14/01, p. 18.

52.     When the Commission became aware of plaintiff's application to ZBA, it became concerned and advised Ms. Villa.  Id.  **Exhibit HH**, Villa Affidavit; **Exhibit II**, Letter to Attorney Londregan dated 6/22/01.

53.     The Commission requested Ms. Villa to contact the Town Attorney on their behalf.  Id.

54.     The Commission later requested that Ms. Villa prepare a memo to the ZBA outlining that the Commission had just reviewed an application by the plaintiff and was opposed to ZBA granting a variance.  Id.

55.     The Commission was concerned that the application to the ZBA was a way around the decision of the Commission.  Id.

56.     Ms. Villa prepared a memo for the Commission, which was reviewed by the Town Attorney and supplemented by the Town Attorney before it was sent to the ZBA.  **Exhibit JJ**, Draft memo sent to Attorney Londregan dated 7/20/01; **Exhibit KK**, Letter to Ms. Villa from Attorney Londregan.

57.     The first paragraph of the memo stated:

> Merry Charters has requested a variance for parking requirements.  The Planning & Zoning Commission recently denied a special use permit to this applicant for failure to provide parking.  The decision is being appealed.  This application to the ZBA appears to be an end run around the litigation and around the Planning & Zoning Commission….

**Exhibit LL**.

 58. It concluded:

> [W]e are very concerned about the potential outcome of a ZBA decision in favor of this applicant or any applicant who fails to provide parking to support their proposed use.  If you have any questions please contact the Town Attorney.

**Exhibit LL**.

 59. The ZBA received the memo, but it had no bearing on its decision. **Exhibit MM**, Deposition of Sullivan, p. 36, ln. 24 – p. 37, ln. 20.

 60.  A public hearing was held before the ZBA on August 14, 2001. **Exhibit GG**.

 61. The ZBA asked Mr. Larkin how many parking spaces the plaintiff needed for his business.  Id.

 62. Mr. Larkin advised that it was unclear, but if one used the standard for marinas, at least one would be required.  Id.

 63. Plaintiff's request was denied on September 11, 2001, by a vote of three in favor and two opposed as a supermajority is required to approve variances. **Exhibit NN**, Notice of Decision; **Exhibit MM**, p. 34, ln. 14.

 64. Chairman Sullivan and member Ben Tamsky voted to deny the request, with members Yacovino, O'Boyle and Mershon voting to approve. **Exhibit NN**.

 65. The denial was due to a lack of any parking.  The ZBA stated as its reason that "commercial ventures require at least one parking spot."  Id.

 66. In 1993, the ZBA had denied a request by another applicant, "Southern Exposure" whose property was also located at the corner of Holmes

and East Main streets, who had proposed a retail shop and tourist information center/ gazebo. Attached as **Exhibit OO** is the Application #93-31; Attached as **Exhibit PP** is the applicant's letter to abutters describing the project; Attached as **Exhibit QQ** is the ZBA Record of Decision dated 11/ 9/ 93.

      67.     Interestingly, the Valentis opposed Southern Exposure's application because of not providing any parking and noted parking problems in downtown Mystic. See **Exhibit RR,** Letter to ZBA from Robert Valenti dated 9/13/93.

      68.     Mr. Sullivan voted to deny Southern Exposure's application. **Exhibit QQ**.

      69.     Plaintiff also appealed the ZBA's decision to Connecticut Superior Court. Both appeals were dismissed because plaintiff could not show aggrievement, as he did not own the dock and did not have a lease to use the dock. Id. **Exhibit SS**, Merry Charters v. Stonington Planning & Zoning Commission; **Exhibit TT**, Merry Charters v. Stonington ZBA.

      70.     Plaintiff no longer owns the Mystic Belle and does not have a lease for the use of the dock. **Exhibit A**, p. 50, ln. 13-14.

      71.     The Commission has not approved a special use permit where parking is located 1200-1300 feet away from the site. **Exhibit VV,** Affidavit of George Thayer, **Exhibits V, CC, WW**.

      72.     George Thayer, the Chairman of the Planning and Zoning Commission at the time plaintiff's applications came before it, voted to deny the second application. **Exhibit VV.**

      73.     Mr. Thayer did not act with a bad-faith or malicious intent to injure the plaintiff in denying the application. Id.

74. Robert Granato was a member of the Planning and Zoning Commission at the time plaintiff's applications came before it and voted to deny the second application. **Exhibit CC**, Affidavit of Robert Granato.

75. Mr. Granato did not act with a bad-faith or malicious intent to injure the plaintiff in denying the application. Id.

76. Daniel Lyon was a member of the Planning and Zoning Commission at the time plaintiff's applications came before it and voted to deny the second application. **Exhibit WW**, Affidavit of Daniel Lyon.

77. Mr. Lyon did not act with a bad-faith or malicious intent to injure the plaintiff in denying the application. Id.

78. Edward Sullivan was the Chairman of the Zoning Board of Appeals at the time of plaintiff's application for a variance came before the Board, and voted to deny plaintiff's request for a variance. **Exhibit XX**, Affidavit of Edward Sullivan.

79. Mr. Sullivan did not act with a bad-faith or malicious intent to injure the plaintiff in denying the request for variance. Id.

80. Ben Tamsky was a member of the Zoning Board of Appeals at the time of plaintiff's application for a variance came before the Board, and voted to deny plaintiff's request for a variance. **Exhibit YY**, Affidavit of Ben Tamsky.

81. Mr. Tamsky did not act with a bad-faith or malicious intent to injure the plaintiff in denying the request for a variance. Id.

        DEFENDANTS,
        TOWN OF STONINGTON,
        STONINGTON PLANNING &
        ZONING COMMISSION, TOWN OF
        STONINGTON ZONING BOARD OF
        APPEALS, EDWARD SULLIVAN and
        GEORGE THAYER


        By_____
          Melinda A. Powell
          ct17049
          Howd & Ludorf
          65 Wethersfield Avenue
          Hartford, CT  06114
          860 249-1361
          (860) 249-7665 (Fax)
          mpowell@hl-law.com

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 1st day of April, 2004.

Frank J. Szilagyi, Esquire
Josphine A. Spinella, Esquire
Silvester & Daly
72 Russ Street
Hartford, CT  06106

                                                                                      _____
                                                                                      Melinda A. Powell