## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MERRY CHARTERS, LLC and          :
CARL SHILLO,                      :
                                  :
            Plaintiffs,           :          NO. 3:02CV336 (MRK)
                                  :
v.                                :
                                  :
TOWN OF STONINGTON, et al.,       :
                                  :
            Defendants.           :


## <u>MEMORANDUM OF DECISION</u>


     Plaintiffs Merry Charters, LLC ("Merry Charters") and Carl Shillo ("Mr. Shillo") bring

this action against the Town of Stonington, the Stonington Planning and Zoning Commission

(the "Commission"), Edward T. Sullivan (Chairman of the Commission at all times relevant to

this action), and George Thayer (Chairman of the Stonington Zoning Board of Appeals (the

"ZBA") at all times relevant to this action).  The lawsuit arises from Defendants' denial of

Plaintiffs' applications for special use permits and for a variance.  Plaintiffs claim that these

actions violated their rights to equal protection and due process under the Fourteenth

Amendment and also contravened Connecticut's common law.  Defendants have moved for

summary judgment and to strike an exhibit offered in support of Plaintiffs' Local Rule 56(a)(2)

Statement [doc. #60].  For the reasons stated below, the Court GRANTS Defendants' Motion for

Summary Judgment [doc. #49] and Defendants' Motion to Strike [doc. #65].

**I.**

In the summer of 2000, Mr. Shillo began operating a commercial tour boat business called "Merry Charters" from a dock owned by Mr. Robert Valenti located on the Mystic River in Stonington, Connecticut.  Defs.' Local Rule 56(a)(1) Statement at ¶ 4 [doc. #51].[1]  Because Mr. Valenti's dock was subject to a Commission-imposed stipulation requiring a zoning permit if the dock were to be used commercially, on August 11, 2000, Plaintiffs applied to the Commission for a special use permit to run a tour boat operation from the Valenti dock.  *Id.* at ¶¶ 10, 12 & Ex. F.  The Commission held public hearings on the application on October 5 and 17, 2000.  *Id.* at ¶¶ 22-23 & Ex. J.

In connection with those proceedings, the Connecticut Department of Environmental Protection ("DEP") raised concerns about a number of aspects of Plaintiffs' application in a letter to the Town Planner.  In particular, the DEP expressed concerns about reconciling the tour boat operation with an existing public access easement at the site, handling sewage generated by the tour boat, and determining whether state coastal permits for the dock and pier had been previously issued.  *Id.* at ¶ 24 & Ex. K.

Another problematic aspect of Plaintiffs' application was that it did not provide for any on-site parking for tour boat customers or employees.  Section 7.10 of the Stonington Zoning Regulations (the "Zoning Regulations") on "Off-street Parking Requirements" states that "parking shall be a required accessory use for each use proposed and shall be shown on all site plans and evaluated in terms of need and sufficiency of design," and Section 7.10.1.2 emphasizes

---

[1]  Merry Charters' tour boat – the *Mystic Belle* – had a maximum capacity of 57.   Pls.' Local Rule 56(a)(2) Statement at 8-9 ¶¶ 1-3 [doc. #60].

that parking spaces must be on-site. *Id.* at ¶ 24 & Ex. UU ("Required spaces shall be on the lot

proposed for development and be under single ownership and control."). Section 7.10.4 further

states:

> Parking Space Requirements by District. Parking spaces shall be provided in
> sufficient number to accommodate the motor vehicles of all occupants,
> employees, customers and any others normally visiting the premises at any one
> time as may be required by the Commission. Spaces shall be provided in not less
> than the number indicated in Table 7-10.

*Id.* Because Table 7-10 of the Zoning Regulations does not specifically list parking

requirements for tour boats, the Commission exercised its powers under Section 7.10.4.1 to

determine the appropriate number of required on-site parking spaces for a tour boat operation.[2]

The Commission decided that the parking requirements for restaurants (which are found in Table

7-10 of the Zoning Regulations) should be applied to Plaintiffs' tour boat operation. As such, the

Commission determined that Plaintiffs' tour boat operation would require fifteen on-site parking

spaces. *Id.* at ¶¶ 29-31.

Because of DEP's concerns and Plaintiffs' failure to provide for any on-site parking, the

Commission on October 17, 2000 denied Plaintiffs' application for a special use permit without

prejudice to renewal. *Id.* at ¶ 32. Plaintiffs submitted a second application for a special use

permit on November 16, 2000. *Id.* at ¶ 33 & Ex. O. The DEP informed the Commission that

Plaintiffs' new application adequately addressed DEP concerns. *Id.* at ¶ 34 & Ex. P. As to on-

site parking, Plaintiffs' second application proposed satisfying that requirement by leasing fifteen

---

[2] Section 7.10.4.1 of the Zoning Regulations states as follows: "The Commission shall
determine the required parking for all uses not included in Table 7-10. Standards as promulgated
by the Institute of Traffic Engineers shall be used as a guide in determining such required
parking." Defs.' Local Rule 56(a)(1) Statement at Ex. UU [doc. #51].

parking spaces from St. Patrick's Church, located approximately 1200 to 1300 feet from the

Valenti dock.  *Id.* at ¶¶ 35-36.  Plaintiffs also asked the Commission to use its discretion under

Section 7.10.2 of the Zoning Regulations to reduce the on-site parking requirements from fifteen

to zero.[3]  *Id.* at ¶ 38.

The Commission sought an opinion from the Town Attorney on whether it could reduce

the on-site parking requirements to zero as Plaintiffs requested.  The Town Attorney advised the

the Commission that it had discretion to do so under the Zoning Regulations and that it had

further discretion to impose substantial conditions on the special use permit specifically related

to the use of the off-site parking at St. Patrick's Church.[4]  *Id.* at ¶¶

---

[3] Section 7.10.2 of the Zoning Regulations states in relevant part:

Reductions.  In DB-5 . . . Districts, the total parking requirement may be reduced by an amount equal to the public parking area immediately adjacent to the site, or an amount or area deemed proper for that use in question by the Commission. The Commission shall use the findings from Special Use Permit requirements as guidelines.

Defs.' Local Rule 56(a)(1) Statement at Ex. UU [doc. #51].

[4] The Town Attorney suggested the following conditions be placed on Plaintiffs' use of the off-site parking at St. Patrick's Church:

1.  St. Patrick's lot must remain open during the hours of operation[;] if the parking lot is closed the operation must close;

2.  A written agreement for the 15 spaces with St. Patrick's Church in which the church and the applicant will notify the Town of Stonington if the agreement is terminated.

3.  If the applicant represents that a certain number of patrons will arrive by bus, the applicant should be made to keep records of the clients and whether they arrived by bus, car and if by car, where did they park. Only in this way will the Town be able to evaluate the representation made by the applicant that a specific percentage of patrons will come by bus rather than by car.

4.  Since it can be expected that St. Patrick's parking lot may be full during its mass schedule, perhaps no cruises should be scheduled during the mass

40-43 & Ex. Z.

Mary Villa, the Town Planner at the time, submitted a memorandum to the Commission recommending denial of Plaintiffs' application. *Id.* at ¶ 46 & Ex. S. Ms. Villa arrived at this recommendation in part because (1) there was no existing contractual agreement between Plaintiffs and St. Patrick's Church for the lease of the fifteen parking spaces at the church; (2) the Stonington Board of Police Commissioners had expressed their concern about Plaintiffs' application due to the lack of adequate parking in the area; (3) satellite or off-site parking was not expressly permitted by the Zoning Regulations, and therefore should be considered prohibited; (4) the public on-street parking adjacent to the site had already been counted toward the parking requirements of other area businesses; and (5) the Town would have difficulty monitoring compliance with use of the off-site parking at the church, especially considering that most people would prefer to park as close as possible to their destination. *Id.* at Ex. S.

Robert Granato, a member of the Commission at the time, also submitted a memorandum to the Commission recommending denial of Plaintiffs' application. *Id.* at ¶ 47 & Ex. BB. Mr. Granato's memorandum noted the following factors that led to his recommendation: (1) on-site parking requirements are important in maintaining the balance between business needs, the density of the area, and traffic considerations; (2) commercial use of the fifteen spaces at St. Patrick's Church would constitute an impermissible change from the parking lot's intended use as church parking; (3) two prior cases where off-site parking was approved by the Commission involved nearby parking (100 yards in one case, and diagonally across the street in the other) that

---

schedule of St. Patrick's.
Defs.' Local Rule 56(a)(1) Statement at Ex. Z [doc. #51].

could only be used by employees (not patrons) of the business; and (4) allowing the off-site

parking proposed by Plaintiffs would set a precedent for every other business in Mystic and

might lead to uncontrolled density use in the area.  *Id.*

The Commission considered Plaintiffs' second application on May 15, 2001, and denied it

by a vote of three to two.  *Id.* at ¶¶ 45-48 & Ex. DD.  The Commission offered the following

reasons for denying Plaintiffs' second application:

1. No on-site parking provided as required by [Zoning Regulation] 7.10.
2. The applicant was unable to provide adequate and appropriate parking.
3. The off-site parking proposed is not expressly permitted in the Regulations and therefore is prohibited.
4. There are existing and well documented parking problems and congestion in the vicinity of the proposed activity, which is in downtown Mystic.  Approval of this project may contribute to such existing problems and thereby threaten the safety of residents and merchants, as well as visitors to the downtown area.

*Id.* at Ex. DD.  Plaintiffs appealed the Commission's denial to the Connecticut Superior Court on

June 4, 2001.  *Id.* at ¶ 50 & Ex. EE.

On June 15, 2001, Plaintiffs applied to the ZBA for a variance from the parking

regulations, requesting that the required number of on-site parking spaces for the tour boat

operation be reduced to zero.  *Id.* at ¶ 51 & Ex. FF.  On July 31, 2001, Defendant George Thayer

(Chairman of the Commission) sent a memorandum to Defendant Edward T. Sullivan (Chairman

of the ZBA) expressing the Commission's opposition to Plaintiffs' variance application.  *Id.* at

Ex. LL.  On August 14, 2001, the ZBA held a public hearing on Plaintiffs' application, and the

ZBA denied the variance request on September 11, 2001, by a vote of three in favor, and two

opposed.  *Id.* at ¶ 63 & Ex. NN.  According to Section 8.10.7 of the Zoning Regulations, a

supermajority vote of four out of five votes was required to approve a variance.  *Id.* at Ex. UU.

The ZBA's stated reason for denying Plaintiffs' variance application was as follows: "No parking provided – commercial ventures require at least one designated spot." *Id.* at Ex. NN.   Plaintiffs also appealed the ZBA's decision to the Connecticut Superior Court. *Id.* at ¶ 69.

The Connecticut Superior Court rejected Plaintiffs' appeals from the denial of their applications for a special use permit and for a variance. *See Merry Charters, LLC v. Stonington Planning & Zoning Com'n*, 2002 WL 1376054, *1-2 (Conn. Super., May 29, 2002); *Merry Charters, LLC v. Town of Stonington Zoning Bd. of Appeals*, 2002 WL 1455709, *1-2 (Conn. Super., May 29, 2002).  The court held that Plaintiffs failed to establish "aggrievement" – a "specific, personal and legal interest in the subject matter of the decision" that had been "specially and injuriously affected" – because, by the time their appeals were heard, Plaintiffs no longer had a lease for the Valenti dock. *Id.*

On February 4, 2002, Plaintiffs filed this action in Connecticut Superior Court seeking damages from Defendants, and Defendants removed this action to this Court on February 26, 2002. *See* Notice of Removal [doc. # 1].  Following discovery, Defendants filed a motion for summary judgment.

## II.

Summary judgment is appropriate when there is no dispute as to a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party carries the burden of demonstrating that there is no genuine material dispute of fact. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000).  "[I]n determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits,

exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Tomka v. Seiler*, 66 F.3d 1295, 1304 (2d Cir. 1995).

Plaintiffs challenge the Commission's and ZBA's actions on two constitutional grounds: equal protection and substantive due process. *See* Second Am. Compl., Counts 1-4 [doc. #35]. Plaintiffs also assert two state common law claims. *See id.*, Counts 5-6.

## A.    Equal Protection

Plaintiffs assert a "class of one" selective enforcement equal protection claim based upon the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).   To establish their selective enforcement claim, Plaintiffs must show "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation omitted). As to the first prong, "[a]s a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury.  This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Id.* at 499 n.2 (citations omitted).  As to the second prong, a "class of one" plaintiff may survive a summary judgment motion by showing that "there was no rational basis for the unequal treatment received." *Id.* at 500 (citing *Olech*, 528 U.S. at 565).[5]

_____

[5] There is an open question in the Second Circuit whether a "class of one" plaintiff must also show that the "denial of the application was motivated by animus." *Harlen Associates*, 273 F.3d at 500.  The Second Circuit has indicated in dicta that "proof of subjective ill will is not an essential element of a 'class of one' equal protection claim." *Jackson v. Burke*, 256 F.3d 93, 97 (2d Cir. 2001).  Because Plaintiffs cannot demonstrate that there was no rational basis for the

1.  **Variance.**     Applying the equal protection standards of *Harlen Associates* to the ZBA's denial of Plaintiffs' variance request, this Court must first determine whether there is evidence of any parties similarly situated to, yet treated differently from, Plaintiffs.  Plaintiffs allege that the tour boat *Mystic River Queen* was similarly situated because it was also a tour boat operation that submitted an application to the ZBA regarding parking regulations.  *See* Pls.' Opp'n Defs.' Mot. Summ. J. at 17-18 [doc. #59].

The parties agree that in 1990 the *Mystic River Queen* asked the ZBA to determine the number of on-site parking spaces it would need for its tour boat operation and that on or about May 30, 1990, the ZBA determined that the *Mystic River Queen* would require three to four on-site parking spaces.  *See* Defs.' Local Rule 56(a)(1) Statement at Ex. S [doc. #51]; Pls.' Opp'n Defs.' Mot. Summ. J. at 18 [doc. #59].  However, from the record before the Court and counsels' representations at oral argument, it appears that the *Mystic River Queen* merely requested an interpretation of the Zoning Regulations, not a variance.  Because neither party could provide the Court with a clear record that the *Mystic River Queen* actually sought and received a variance from the ZBA – such as a notice of decision issued by the ZBA – the *Mystic River Queen* cannot be considered similarly situated to Plaintiffs, since Plaintiffs sought a variance and it appears that *Mystic River Queen* did not.

In any event, even if the Court assumed that the *Mystic River Queen* did seek a variance from the on-site parking Zoning Regulations and thus was similarly situated to Plaintiffs in that they were both tour boat operations that sought variances from the Zoning Regulations regarding

---

alleged unequal treatment, the Court has no need to address whether a showing of personal animus is also required.

parking requirements, the record shows that *Mystic River Queen* was not treated differently from Plaintiffs.   In denying Plaintiffs' variance request, the ZBA stated that "commercial ventures require at least one designated spot," a ruling that is not inconsistent with the ZBA's advice to the *Mystic River Queen* that it needed three to four on-site parking spaces for its operation.   Indeed, if anything, by requiring only "at least one designated spot," the ZBA treated Plaintiffs more generously than the *Mystic River Queen*.

Even assuming that the *Mystic River Queen* and Plaintiffs were similarly situated yet treated differently, the question would still remain whether there was a rational basis for the ZBA's alleged unequal treatment of the Plaintiffs.   According to the Second Circuit, "a zoning board's decision can be considered irrational only when the board acts with no legitimate reason for its decision."  *Harlen Associates*, 273 F.3d at 500 (citing *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996)) (internal quotations omitted).   Plaintiffs must produce evidence from which a trier of fact could conclude that there was no rational basis for the alleged unequal treatment. Yet, Plaintiffs have provided no such evidence.   The ZBA's requirement of at least one designated parking spot for a commercial venture such as Plaintiffs' proposed tour boat operation appears on its face to be a legitimate reason for the ZBA's denial of Plaintiffs' variance request. *See Bloom v. Zoning Bd. of Appeals of City of Norwalk*, 233 Conn. 198, 206-07 (1995) ("Courts are not to substitute their judgment for that of the [ZBA] . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . .   A variance constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town. . . . It is well established, however, that the granting of a variance must be reserved for unusual or exceptional circumstances.") (internal quotations and

-10-

citations omitted).

Because Plaintiffs have failed to establish either of the two prerequisites for their equal protection claim relating to the ZBA's denial of Plaintiffs' variance request, Defendants are entitled to judgment on that claim.

**2.    Special Use Permits**.  Turning next to the Commission's denial of the Plaintiffs' special use permits, the Court first must determine whether there are any parties similarly situated to Plaintiffs, yet treated differently by the Commission.  Plaintiffs allege that Anthony J's restaurant and the *Argia* tour boat are similarly situated to the Plaintiffs.  *See* Pls.' Opp'n Defs.' Mot. Summ. J. at 17, 19-20 [doc. #60].

Before turning to Plaintiffs' claim regarding Anthony J's, the Court must address Defendants' motion to strike certain evidence that Plaintiffs submitted in support of that claim. *See* Motion to Strike Exhibit 10 of Plaintiffs' Local Rule 56(a)(2) Statement [doc. #65].  "A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion."  *Newport Elec., Inc. v. Newport Corp.*, 157 F. Supp. 2d 202, 208 (D. Conn. 2001).  "The principles governing admissibility of evidence do not change on a motion for summary judgment. . . . Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  "[A] motion to strike is appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay or conclusory statements, are incomplete, or have not been properly authenticated."  *Spector v. Experian Information Services Inc.*, 321 F. Supp. 2d 348, 352 (D. Conn. 2004).

Plaintiffs' Exhibit 10 consists of notes and a hand-drawn schematic created by a member

of the community, Mr. Kirkpatrick, purportedly relating to a Commission hearing on a special

use permit application by a business called Trader Jacks.   Even though the document was

created in connection with Trader Jacks' hearing, Plaintiffs produced this document in an attempt

to establish from it that Anthony J's restaurant had 21 parking spaces on the street adjacent to the

restaurant and no on-site parking.  *See* Pls.' Local Rule 56(a)(2) Statement at 13 ¶ 35 [doc. #60].

Defendants allege that the information presented in Exhibit 10 is unreliable,

unauthenticated, hearsay that would not be admissible at trial under the Federal Rules of

Evidence.  *See* Defs.' Mot. to Strike at 1-2 [doc. #65].  "Hearsay is a statement, other than one

made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of

the matter asserted." Fed. R. Evid. 801(c).  Plaintiffs offered these notes to prove the truth of the

matter asserted in them, and as such the document is clearly inadmissible hearsay unless a

hearsay exception applies.

Even though Plaintiffs refer to Exhibit 10 as  "Commission's Notes," they were created by

a member of the public attending a Commission hearing and as such are clearly not official

records of the Commission's proceedings.  Plaintiffs appear to acknowledge this because they

assert that the notes were submitted to the Commission and marked as an exhibit during the

Trader Jacks public hearing, and that therefore the notes are admissible under the public records

exception to the hearsay rule.  *See* Fed. R. Evid. 803(8)(C).  Rule 803(8)(C) states in relevant

part that the following is not excluded by the hearsay rule: "Records, reports, statements, or data

compilations, in any form, of public offices or agencies, setting forth . . . [(C)] factual findings

resulting from an investigation made pursuant to authority granted by law, unless the sources of

information or other circumstances indicate lack of trustworthiness."  On its face, Exhibit 10 is

not a record of a public agency setting forth factual findings, and in any event Exhibit 10's source indicates a lack of trustworthiness. Therefore, Exhibit 10 is inadmissible hearsay, and the Defendants' Motion to Strike [doc. #65] is granted.

Although now struck from the record, even if the Court were to have accepted all of the Plaintiffs' information regarding Anthony J's restaurant as true, the Court's conclusion would not change because Plaintiffs and Anthony J's were not, in fact, similarly situated. The documents before this Court show that Anthony J's never applied for a special use permit regarding its parking requirements, see Pls.' Objection to Defs.' Mot. to Strike Pls.' Ex. at 8 [doc. #67]; Defs.' Reply to Pls.' Opp'n at 3 [doc. #64], and at oral argument, the parties agreed. Because Anthony J's neither applied for nor needed a special use permit related to its parking, Anthony J's cannot be considered similarly situated to Plaintiffs for purposes of their equal protection claim.

As to Plaintiffs' claim that they are similarly situated to the *Argia* tour boat, it is undisputed that the *Argia*'s dock was a pre-existing nonconforming use that did not require a special permit in order to support a commercial tour boat operation. *See* Pls.' Local Rule 56(a)(2) Statement at 14 ¶¶ 40-41 [doc. #60]. As such, the *Argia* was in an entirely different situation from Plaintiffs. The dock Plaintiffs intended to use – the Valenti dock – not only was not a preexisting nonconforming use, but also was subject to a specific stipulation demanded by the Commission that required a special use permit if the dock were ever used by a commercial entity. Defs.' Local Rule 56(a)(1) Statement at ¶¶ 10, 12 & Ex. F [doc. #51]. Because the *Argia* neither applied for nor needed a special use permit related to its parking, the *Argia* cannot be considered similarly situated to Plaintiffs for purposes of their equal protection claim.

In sum, Plaintiffs have failed to produce a single similarly situated party that sought and

-13-

was granted a special use permit from the Commission to reduce its on-site parking requirements to zero or to use off-site parking roughly 1200 to 1300 feet away as a substitute for the on-site parking requirements.  Therefore, Plaintiffs' equal protection claim fails as a matter of law.

Even if Plaintiffs had satisfied the similarly situated prong of their equal protection claim, they would still have to produce evidence from which a trier of fact could conclude that there was no rational basis for the treatment Plaintiffs received from the Commission.  As stated above, "a zoning board's decision can be considered irrational only when the board acts with no legitimate reason for its decision."  *Harlen Associates*, 273 F.3d at 500 (citing *Crowley*, 76 F.3d at 52) (internal quotations omitted).  While Plaintiffs allege that the Commission behaved arbitrarily and maliciously, *see* Pls.' Opp'n to Defs.' Mot. Summ. J. at 24-30 [doc.# 59],[6] they fail to produce any evidence demonstrating that the Commission had "no legitimate reason for its decision."   On the contrary, the stated reasons for the Commission's denials of the Plaintiffs' first application – environmental concerns and a lack of on-site parking – as well as Plaintiffs' second application – a lack of on-site parking, the determination that off-site parking at St. Patrick's Church was prohibited, and the existing parking problems and congestion in the vicinity – appear

---

[6] In support of their claims of malice, bad faith, and arbitrariness on the part of the Commission, Plaintiffs allege, *inter alia*, that the Commission (1) maliciously led Plaintiffs to believe that their application would be approved, even though it eventually was not; (2) misinterpreted the Zoning Regulations with respect to both the on-site parking requirements and the prohibition on off-site parking at St. Patrick's Church; (3) did not conduct a study of how much the Plaintiffs' operation would impact the safety and traffic congestion concerns; (4) did not follow the opinion of the Town Attorney in the Plaintiffs case, even though they had purportedly followed his opinion in all prior cases; and (5) interfered with the Plaintiffs' rights to apply to the ZBA for a variance.  *See* Pls.' Opp'n to Defs.' Mot. Summ. J. at 24-30 [doc.# 59]. Regardless whether any of these allegations are true, they at most question the Commission's process and do little to demonstrate that the reasons offered by the Commission for denying Plaintiffs' application were irrational.

entirely rational and legitimate, and Plaintiffs have produced no evidence to the contrary.  Indeed,

the legitimacy of the Commission's concerns was all but conceded by Plaintiffs at oral argument,

and this Court need not delve more deeply into the reasons offered by a local zoning authority.

As the Second Circuit has sensibly emphasized, "federal courts should not become zoning boards

of appeal to review nonconstitutional land-use determinations by the Circuit's many local

legislative and administrative agencies." *Zahra v. Town of Southold*, 48 F.3d 674, 679-80 (2d

Cir. 1995) (internal quotations omitted).

     Because Plaintiffs failed as a matter of law to establish either of the two prerequisites for

their equal protection claim against the Commission, Defendants are entitled to judgment on that

claim as well.

## B.    Substantive Due Process

     To survive a motion for summary judgment on a substantive due process challenge to the

decisions of a local zoning authority, "a plaintiff must show both (1) that he had a valid property

interest in the granting of the permit, and (2) that the defendants infringed that property interest

in an arbitrary or irrational manner." *Harlen Associates*, 273 F.3d at 503.  The Second Circuit

applies a "strict 'entitlement test' in land use regulation cases to determine if the abridgement of

an asserted property right is cognizable under the substantive component of the Due Process

Clause." *Id.*  As a general rule, "entitlement turns on whether the issuing authority lacks

discretion to deny the permit, i.e., is required to issue it upon ascertainment that certain

objectively ascertainable criteria have been met." *Natale v. Town of Ridgefield*, 170 F.3d 258,

263 (2d Cir.1999).  As to the second requirement, a denial by a local zoning authority violates

substantive due process standards only if the denial "is so outrageously arbitrary as to constitute a

gross abuse of governmental authority." *Natale*, 170 F.3d at 263. On the basis of the undisputed

facts in the record, Plaintiffs cannot satisfy either of these requirements.

      As the Second Circuit noted in *Natale*, whether Plaintiffs have established a valid

property interest in an application for a variance or special use permit hinges on whether the

decisionmaking body had discretion to deny the application. Section 8.10.3 of the Zoning

Regulations empowers the ZBA to grant variances in cases of hardship, stating as follows:

> Hardship. Where there is difficulty or unreasonable hardship, but not economic
> hardship, in the way of carrying out the strict letter of the Zoning Regulations, the
> Zoning Board of Appeals shall have power in a specific case to vary the
> application of any bulk provision of the ordinance, if such variance will be in
> harmony with the general purpose and intent of the ordinance, the Town Plan of
> Development, and if the public health, safety and welfare will be served and
> substantial justice done.

Defs.' Local Rule 56(a)(1) Statement at Ex. UU [doc. #51]. According to Section 8.10.1 of the

Zoning Regulations, the power to grant variances in cases of hardship (and, indeed, any other

power or duty of the ZBA) "shall be exercised subject to appropriate conditions and safeguards in

harmony with the purpose and intent of these [zoning] regulations, the Plan of Development, and

in accordance with the promotion of the health, safety, welfare and maintenance of property

values in the Town of Stonington." *Id.*

      It is readily apparent from the text of Sections 8.10.3 and 8.10.1 that the ZBA is vested

with broad discretion to grant or deny a variance. The ZBA's broad discretion is also confirmed

by case law. *See, e.g.*, *Crowley* 76 F.3d at 52 (holding that similar language in the Village of

Southampton Zoning Regulations "vested the Zoning Board with extremely broad discretion to

grant or deny a variance."); *Pleasant View Farms Development, Inc. v. Zoning Bd. of Appeals*,

218 Conn. 265, 269 (1991) ("In reviewing the actions of a zoning board of appeals we note that

such a board is endowed with a liberal discretion, and its actions are subject to review by the courts only to determine whether they were unreasonable, arbitrary or illegal.") (internal quotations and citations omitted). In fact, at argument, Plaintiffs' counsel conceded that the ZBA has discretion in ruling on variance requests.

Plaintiffs' sole argument that they were entitled to a variance is founded on their claim that their application met all the guidelines in Section 6.4 of the Zoning Regulations, see Pls.' Opp'n to Defs.' Mot. Summ. J. at 34 [doc.# 59]. But this argument is unavailing. A variance, by definition, allows a ZBA to exercise its discretion and deviate from the Zoning Regulations for those who specifically do not comply with the Zoning Regulations and can demonstrate hardship. Plaintiffs' assertion that they met all the Zoning Regulations would have obviated the need for a variance, not entitled them to one. In fact, by seeking a variance, Plaintiffs essentially admitted that they did not conform to the Zoning Regulations, and the ZBA had broad discretion to determine whether it would relieve Plaintiffs of those Zoning Requirements.

So, too, did the Commission have discretion to evaluate and deny Plaintiffs' applications for special use permits. Section 6.4 of the Zoning Regulations outlines the "Standards for Granting a Special Permit," stating in relevant part:

> After a public hearing held according to applicable Statutes, the Commission must find that the following conditions are fulfilled by the proposal [for a special use permit]: . . .
> 6.4.3   That transportation services are adequate and no undue traffic generation will result that would cause a deleterious effect on the local welfare or the safety of the motoring public. . . .
> 6.4.5   That no adverse effect will result to the character of the district, property values, historic features, prosperity, nor to the public health, safety and welfare of the residence of the area or the Town.

Defs.' Local Rule 56(a)(1) Statement at Ex. UU [doc. #51]. Section 6.5 of the Zoning

-17-

Regulations outlines the "Commission Powers Relative to Action on a Special Permit Use," providing in relevant part that the "Commission shall have the power to approve, deny or modify any proposal and set forth special stipulations of approval or modification." *Id.*

The Connecticut Supreme Court has long "recognized that the special permit process is, in fact, discretionary." *Irwin v. Planning & Zoning Comm'n*, 244 Conn. 619, 626 (1998). *See also Double I Ltd. Partnership v. Plan & Zoning Comm'n*, 218 Conn. 65, 72 (1991) ("In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal.") (internal citations and quotations omitted).  As is relevant to this case, the Connecticut Supreme Court has also held that "before [a] zoning commission can determine whether [a] specially permitted use is compatible with the uses permitted as of right in [a] particular zoning district, it is *required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood*." *Barberino Realty & Development Corp. v. Planning & Zoning Comm'n*, 222 Conn. 607, 613 (1992) (emphasis added).  Only if the Commission determined that a special permit met all of the applicable zoning requirements would the Commission no longer have had discretion to deny a special permit.  As the Connecticut Supreme Court explained in *Irwin*:

> Although it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to determine *whether* the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true. Thus, the zoning commission can exercise its discretion during the review of the proposed special exception, as it applies the regulations to the specific application before it.

-18-

*Irwin*, 244 Conn. at 628 (emphasis in original).  Therefore, Connecticut law establishes that the

Commission, at the very least, had discretion to determine whether Plaintiffs' special use permit

proposal satisfied the relevant standards set forth in the Zoning Regulations.

Despite Plaintiffs' argument they were entitled to their special use permits because their

applications met all the guidelines in Section 6.4 of the Zoning Regulations, see Pls.' Opp'n Defs.'

Mot. Summ. J. at 34 [doc.# 59], the undisputed facts show that neither of Plaintiffs' applications

for a special use permit met all the applicable Zoning Regulations.  As evident from the

undisputed facts outlined above, both special use permit applications sparked considerable

concern and discussion by the Commission and other interested parties such as the DEP

regarding parking, traffic generation and environmental issues.  The record certainly does not

establish that either application met all the guidelines of Section 6.4 of the Zoning Regulations as

submitted.  In any event, under Connecticut law, the Commission had discretion to determine

whether Plaintiffs' special use permit proposal satisfied the relevant standards set forth in the

Zoning Regulations, and the Commission exercised that discretion to conclude that the

applications did not satisfy those standards.

Furthermore, as described above, Plaintiffs' August 11, 2000 application required the

Commission to exercise its discretion in determining how many on-site parking spaces were

needed for the tour boat operation, because this use had not been expressly addressed in the

Zoning Regulations.  The Plaintiffs' November 16, 2000 application explicitly asked the

Commission to exercise its discretion under Section 7.10.2 of the Zoning Regulations to reduce

the number of on-site spaces required.  By invoking Section 7.10.2, Plaintiffs effectively

acknowledged that the Commission had discretion to retain the number of required on-site

parking spaces at fifteen, and therefore also had discretion to deny Plaintiffs' application for a special permit. Similarly, the Plaintiffs' proposed off-site parking at St. Patrick's Church was an alternative arrangement not explicitly provided for in the Zoning Regulations. Therefore, with respect to the off-site parking at St. Patrick's Church, the Commission was required to exercise its discretion in interpreting the Zoning Regulations by evaluating the potential impact of such an arrangement on traffic generation, public safety, and local welfare, among other concerns.

In sum, because both the ZBA and the Commission had discretion to deny Plaintiffs' applications for a variance and a special use permit, Plaintiffs cannot show that they had a "valid property interest" in the granting of either. *See Harlen Associates*, 273 F.3d at 503. Therefore, Plaintiffs have failed to satisfy the first requirement of their substantive due process claims.

Furthermore, even if (contrary to relevant regulations and case law) the ZBA's and Commission's decisions were not solely within their discretion, Plaintiffs' substantive due process challenge would still fail because they cannot show that Defendants' decisions were "outrageously arbitrary" and thus constituted a "gross abuse of governmental authority." *Natale*, 170 F.3d at 263. Both parties agreed at oral argument that this was an issue for the Court to decide as a matter of law, based on the submissions of the parties.

Plaintiffs allege that the Defendants' decisions were arbitrary and irrational because they failed to follow the Zoning Regulations and they failed to apply their own precedent on special parking arrangements and tour boat operations. *See* Pls.' Opp'n to Defs.' Mot. Summ. J. at 34 [doc.# 59]. As to Plaintiffs' first argument, the preceding discussion highlighted the fact that there were no clear guidelines in the Zoning Regulations on tour boat operations or on substituting distant off-site parking for on-site parking. Since the ZBA and Commission had no

-20-

specific guidelines to follow, they legitimately exercised their discretion under the Zoning

Regulations to interpret and apply the general principles of the Zoning Regulations to the

Plaintiffs' special parking requests.  Characterized thusly, the ZBA and the Commission followed

the Zoning Regulations and came to their decisions in a rational manner.  Plaintiffs' second

argument that Defendants failed to follow precedent is equally without merit because it is

nothing more than Plaintiffs' equal protection argument in due process guise, and this Court has

already rejected Plaintiffs' claim that they were irrationally treated differently from similarly

situated parties.  In sum, a review of the record before the Court reveals no evidence that either

the ZBA or the Commission acted in a manner that might remotely be considered "outrageously

arbitrary" or a "gross abuse of governmental authority."  *Natale*, 170 F.3d at 263; *see also Harlen*

*Associates*, 273 F.3d at 503.  Therefore, Plaintiffs' due process claims fail as a matter of law, and

Defendants are entitled to judgment.

**C.    State Law Claims**

Having disposed of the federal claims in this case, the Court has discretion to dismiss the

state claims as well under 28 U.S.C. § 1367(c)(3). "In exercising its discretion with respect to

retaining supplemental jurisdiction, the district court balances several factors 'including

considerations of judicial economy, convenience, and fairness to litigants.' " *Correspondent*

*Services Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 126 (2d Cir. 2003) (quoting

*Purgess v. Sharrock, M.D.*, 33 F.3d 134, 138 (2d Cir. 1994)).  While considerations of judicial

economy and convenience do not lean strongly in either direction, the nature of the case and

Defendants' status as state actors suggest that it would be more appropriate and fair for a state

court to determine whether the behavior of the town officials in this case was sufficient to violate

state law.  In fact, both parties agreed at oral argument that if this Court were to dismiss all the

federal claims, the Court should not exercise supplemental jurisdiction over the state law claims.

The Court agrees.   Accordingly, the Court will decline the exercise of supplemental jurisdiction

over Plaintiffs' state law claims.  The state claims are dismissed without prejudice.

### III.

The Court GRANTS Defendants' Motion for Summary Judgment [doc. #49] and

Defendants' Motion to Strike [doc. #65].  The Clerk shall enter judgment for Defendants on

Plaintiffs' equal protection and due process claims – Counts One through Four of Plaintiffs'

Second Amended Complaint [doc. #35].  The Court declines to exercise supplemental

jurisdiction over Plaintiffs' state law claims – Counts Five and Six of Plaintiffs' Second Amended

Complaint [doc. #35] – and therefore a judgment shall enter dismissing these Counts without

prejudice to Plaintiffs' right to pursue those claims in state court.  **The Clerk is directed to close**

**this file.**

IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


Dated in New Haven, Connecticut: <u>October 27, 2004</u>